**UNITED STATES of America, Plaintiff-Appellee,**

*v.*

**George B. PARR, Defendant-Appellant.**

**No. 74-2378.**

United States Court of Appeals, Fifth Circuit.

March 24, 1975.

Douglas Tinker, Corpus Christi, Tex., Charles A. McNelis, Washington, D. C., Nago Alaniz, San Diego, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., Edward B. McDonough, Jr., George A. Kelt, Jr., James R. Gough, Asst. U. S. Attys., John Clark, Special Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before DYER, MORGAN and GEE, Circuit Judges.

GEE, Circuit Judge:

George Parr, a longtime political figure in the South Texas County of Duval, was found guilty of four counts of attempted tax evasion[1] and four of filing returns, under penalty of perjury, which he did not believe correct in all material respects.[2] Counts 1 and 2 for attempted evasion and perjury were founded on the same income items for the year 1966, counts 3 and 4 for 1967, etc. Finding the perjury counts lesser included offenses within the corresponding attempt counts in each case, the district court imposed no sentence upon any of them.

Identical sentences of five years imprisonment and a $3,500 fine were imposed on each of the four attempt counts for the years 1966–69. The incarceration sentences for the years 1966 and 1967 were made concurrent; the other two were suspended, and Parr was placed on probation for five years consecutive to his imprisonment. The fines were made cumulative for a total of $14,000. He appeals each conviction. The government's case rests on specific items of unreported income for each year in question, and we consider Parr's complaints about each count in order of time.

*Count One: The Year 1966.*

The two items of additional income for this year were payments allegedly extorted from one Stautz, an architect-contractor working on public buildings in the Duval County area and an immunized witness. On two occasions during that year, Stautz testified, he responded to anonymous telephone messages that Parr or Papacito[3] wanted "some money" in one instance and in another "wanted $40,000 that night" by delivering currency to Parr. Each amount, first $20,000 and next $40,000, was delivered by him directly to Parr. Parr did not testify, and no explanation of Stautz' assertions was attempted by the defense. Instead, Stautz was subjected to lengthy and severe cross-examination under which, among other things, he admitted to untruthful statements to the grand jury. The jury, nevertheless, believed him, perhaps partly because he was able to produce contemporaneous diary entries and expense vouchers which bolstered his account. This was a straight credibility choice, well within the province of the jury and reasonably supported by entirely sufficient evidence.

Appellant Parr, however, suggests that his conviction on this count may have been the result of cross-count prejudice, claiming that the other counts are of such a prejudicial nature as to infect the entire trial. We have recog-

1. 26 U.S.C. § 7201.
2. 26 U.S.C. § 7206(1).

3. "Little father," in Tex-Mex.

nized the possibility of such prejudice, at the same time indicating that only in an unusual case would it be grounds for reversal, since in all multi-count indictments there is the possibility of an inference of guilt from one count to another. United States v. Meriwether, 486 F.2d 498, 504 (5th Cir. 1973). This is nothing like such a case. The Stautz episode stands alone, has connections with the year 1966 only, and concerns an entirely different sort of income item than the other years. As such, we think it most unlikely that Stautz' testimony could have been taken by the jury to establish guilt under any other count, or the evidence under any other to indicate guilt under the first. United States v. Febre, 425 F.2d 107, 113 (2d Cir.), cert. denied, 400 U.S. 849, 91 S.Ct. 40, 27 L.Ed.2d 87 (1970).

### Count Two: The Year 1967.

Two disparate items make up the asserted additional income for 1967 of seventy-three thousand-odd dollars. One is a forty thousand dollar payment from Harris Fender, a municipal bond dealer; the other represents the value of irrigation equipment purchased with public funds and installed on a ranch which belonged to the widow of Parr's brother but was operated by Parr. Since this second item typifies others which we will meet in later years and requires rather thorough discussion, we commence with the Fender payment.

■ This was in the form of a check dated May 24, 1967, drawn by Fender in favor of Parr and carrying the notation "Legal" on its face. Parr reported this amount as representing long-term capital gain on the sale of a zero-basis asset. It was the United States' contention that it represented ordinary income. For several years prior to 1967 Fender, through his wholly-owned corporation, James C. Tucker & Co., Inc., had been seeking to control all City of Benavides Refunding Bonds and certain of its earlier bond issues. In early January 1967, the Duval County Conservation and Reclamation District (DCCRD), to which Parr was on

retainer for legal advice, purchased the entire outstanding indebtedness of that city. Fender's accountant testified that the payment was part of Fender's cost in acquiring these bonds, but refused to go so far as to characterize it as payment for the purchase of any bond. Parr's accountant testified that he was never shown any instrument indicating Parr's ownership of any City of Benavides bond but merely took Parr's word for the nature of the item. Parr's return indicated that he acquired the purported bonds in 1939, but his 1957 petition in bankruptcy listed no City of Benavides bonds. Bondholders lists for the Benavides refunding bonds did not reflect Parr as a bondholder, and all earlier bond series were barred and uncollectible unless exchanged for the refunding bonds by middle 1959—long before the time of Parr's supposed "sale" on May 27, 1967. Moreover, as noted, DCCRD had purchased all Benavides' outstanding indebtedness months before this. On the above considerations, we think the government's case on this item was well made. Proof beyond all possible doubt was not required, and viewing the above evidence in the light most favorable to the United States, Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), United States v. Fairchild, 505 F.2d 1378, 1381–82 (5th Cir. 1975), we agree the jury could have concluded no reasonable doubt remained. Parr paid a tax of several thousand dollars for the year 1967; it is obvious that the application of ordinary income treatment, rather than capital gain, to this large item would have produced a substantial increase in tax.

As noted earlier, the second item of income for 1967 is of a sort with similar items for the remaining years: an expenditure by a public body for equipment or services for the Atlee Parr Ranch. The facts of George Parr's relationship to this land are, in essence, undisputed; the question is what they make out.

Parr's brother Atlee died in 1967, leaving a wife and young son who lived on his ranch about six miles south of Bena-

vides. At the time of his death, the ranch was brush-choked and carrying less than 250 head of cattle, though it comprised 14,000 acres. Atlee Parr willed the ranch to his widow, Hilda, who had never participated in operating the ranch and knew little about it. She agreed with Parr for him to operate the ranch and market her cattle for her. In return for these services, he was to have the right to run two cows on the place for every one of hers. Mrs. Parr testified to no real control by her over Parr's operations at the ranch except directing him to sell such of her cattle as could be sold from time to time, apparently on the basis of her financial needs, since she testified, "usually it was before income tax" that her instructions to sell were given. She made Parr free of all ranch supplies and equipment on hand, but as for any purchased by him thereafter for use on the place, they would be his. Mrs. Parr also testified that she had no hopes of adding to her herd and that her husband died owing a $50,000 note to a local bank which she would be unable to pay unless she sold the ranch. There was testimony to extensive brush-clearing, fertilizing and irrigation activity at the ranch after Atlee Parr's death; and that within three years the ranch had gone from a "heavily-timbered" condition to looking very nice, with at least tenfold increase in cattle carried on it.

For the year 1967, the ranch improvement sought to be charged to Parr as additional income was a $33,000-odd well and sprinkler system, installed there at Parr's direction and paid for by DCCRD.

■■■ As the above recitation indicates, the jury can hardly have avoided the conclusion that Parr, commencing

with his brother Atlee's death, began a private ranching operation on Hilda Parr's land which was conducted in large part at public expense. On long-settled principles, such as that the term "gross income" as used in the tax statutes is to be broadly interpreted[4] and measured by the full extent of Congress' taxing powers,[5] that items of such income need not be in form of currency so long as they can be valued in its terms,[6] and that unlawful as well as lawful gains are taxable as income,[7] it is plain that the receipt of benefits such as these may be the receipt of gross income. Capital improvements made by a corporation on a shareholder's property have been held, for example, to constitute taxable income to the shareholder in their full amount.[8]

Granting all the foregoing, however, it remains the fact that actual *title* to the Atlee Parr Ranch has at no time been in Parr, nor is it ever likely to be.[9]

■■■ Thus, Parr's main argument before us on this point seems to be that since formal title in him was not shown, the full amount of these improvements cannot be laid at his door and the United States has failed to establish with precision the amount of additional income received by him in 1967, thus making a showing of a substantial tax deficiency impossible. Rental value is all that could be charged as income received by him, he says, and no evidence of rental value of the well and sprinkler system for the year 1967 was introduced. But the error, if any, in this year is irrelevant since the government had proved a substantial tax owing due to the $40,000 Fender transaction. The government need not prove the exact income alleged

---

4. Comm'r v. Glenshaw Glass Co., 348 U.S. 426, 75 S.Ct. 473, 99 L.Ed. 483 (1955).

5. James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961).

6. See, e. g., Comm'r v. John Smith, 324 U.S. 177, 65 S.Ct. 591, 89 L.Ed. 830 (1945), 2 Mertens, Federal Income Taxation ¶ 11.03 (1974).

7. *James, supra*, note 5; Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952).

8. See, e. g., Elmer J. Benes, 42 T.C. 358 (1964), aff'd, 355 F.2d 929 (6th Cir. 1966); Estate of Clarke, 54 T.C. 1149 (1970); and Western Supply and Furnace Co., 18 CCH Tax Ct.Mem. 288, 301–02 (1959).

9. Hilda Parr testified that at her death the ranch would pass to her young son.

in the indictment [10] nor evasion of the entire tax charged,[11] so long as it is shown that a substantial portion of tax was evaded.[12] However, we need not rely on these settled principles, and indeed will not, given the similarity between this transaction and others in subsequent years which bear more substantially on the validity of conviction on the count. It is familiar law that the revenue scheme ". . . is not so much concerned with the refinements of title as it is with actual command over the property taxed—the actual benefit for which the tax is paid."[13] The jury was well warranted in concluding that Parr demonstrated a de facto ownership—plenary control, exercised for his own benefit—over the DCCRD funds expended in 1967 on the Atlee Parr Ranch, as well as over the ranch itself, with Hilda Parr figuring on the premises as little more than a resident client or pensioner. Full value of the equipment being a readily realizable economic gain [14] attributable to Parr, the count will stand. Finally, even if Parr had received only rental value as income, a debatable proposition on the evidence, substantial unreported income and tax due would still have been shown.[15] It would not have affected his guilt or innocence. *See* White v.

United States, 216 F.2d 1, 5 (5th Cir. 1954) and United States v. Smith, 206 F.2d 905, 910 (3d Cir. 1953).

*Count Three: The Year 1968.*

The claimed items of additional income for this calendar year total over $68,000 and consist of helicopter services to the Atlee Parr Ranch (counting and driving cattle, chemical distribution, varmint control), 100 tons of fertilizer delivered there, and additional irrigation equipment. All were ordered by Parr and, by his procurement, paid for by DCCRD. Whether deemed additions to the income of Parr or of Parr Cattle Company, these benefits would have produced substantial additional tax due by Parr in 1968; and our observations regarding 1967's similar items apply here.

*Count Four: The Year 1969.*

The additions to income charged for 1969 consist of additional and similar equipment and services to the Atlee Parr Ranch, paid for by DCCRD and totalling well over $100,000, plus a salary advance and a "check swap" by which Parr received, in his capacity as legal advisor to DCCRD, $15,000 in additional funds;

**10.** United States v. Cole, 463 F.2d 163, 167 (2d Cir.), cert. denied, 409 U.S. 942, 93 S.Ct. 238, 34 L.Ed.2d 193 (1972); United States v. Burdick, 221 F.2d 932 (3d Cir.), cert. denied, 350 U.S. 831, 76 S.Ct. 65, 100 L.Ed. 742 (1955); White v. United States, 216 F.2d 1, 5 (5th Cir. 1954); Gendelman v. United States, 191 F.2d 993, 996 (9th Cir. 1951), cert. denied, 342 U.S. 909, 72 S.Ct. 302, 96 L.Ed. 680 (1952); Schuermann v. United States, 174 F.2d 397, 399 (8th Cir.), cert. denied, 338 U.S. 831, 70 S.Ct. 69, 94 L.Ed. 541 (1949).

**11.** United States v. Schenck, 126 F.2d 702, 704 (2d Cir. 1942); Tinkoff v. United States, 86 F.2d 868, 878–79 (7th Cir. 1936), cert. denied, 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346 (1937). See also Reynolds v. United States, 225 F.2d 123, 127 (5th Cir.), cert. denied, 350 U.S. 914, 76 S.Ct. 197, 100 L.Ed. 801 (1955), citing *Tinkoff, supra.*

**12.** That being the relevant element of § 7201. Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1965); Lawn v.

United States, 355 U.S. 339, 361, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958). And we have noted that a showing of *some* omitted items of income in the year in question suffices for this element of the crime. Kowalsky v. United States, 290 F.2d 161 (5th Cir.), cert. denied, 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961).

**13.** E. g., Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 74 L.Ed. 916 (1930).

**14.** *Rutkin, supra,* note 7.

**15.** Even disregarding the $40,000 Fender transaction, reclassified as ordinary income, and giving due allowance to Parr's argument that if he did derive benefits he did so only as a member of Parr Cattle Company, a partnership with his nephew, Archer. The partnership returns for 1967 do not indicate positively whether they include the Atlee Parr Ranch operation or not, but to a degree contra-indicate, since they claim a substantial deduction —$3,000—for rent, presumably land rent.

and finally the purchase by DCCRD of the bank's $50,000 note which Atlee Parr died owing and which Hilda Parr testified she'd have had to sell the ranch to pay.

As to the benefits furnished by DCCRD to the Atlee Parr Ranch, Parr's situation in 1969 differs in no material respect from that obtaining in 1967 and 1968. Our prior observations on the earlier items similar to these apply with full force here. The other items present differing and in some instances closer questions. However, even should we assume them entirely wanting in evidentiary support, the ranch benefits alone constitute proof of a substantial portion of the claimed deficiency, and one sufficient to support the jury verdict of guilty on Count Seven. These additional items are not of an especially prejudicial nature by comparison with the others charged, nor, in view of the sentence imposed under Count Three, do we think it likely that the court's judgment would have been affected even by the omission of these additional charges.[16]

Parr advances several additional minor points—an assertion of plain error in the jury charge, a supposed absence of evidence of willfulness, etc.—which we find wanting in sufficient merit to require discussion. Recognizing the insurmountable difficulties attending a direct attack on his conviction under Count One, he also urges that we eschew the concurrent sentence doctrine, find prejudice under other counts affecting the Count One verdict, and require a retrial of Count One. We have indeed placed no reliance upon that doctrine,[17] but we likewise find no such prejudice. Finally, he advances a claim of prosecutorial misconduct in which we find no merit.

Affirmed.

---

**16.** United States v. Cole, *supra*, note 10. *Cf.* Marks v. United States, 391 F.2d 210, 211 (9th Cir.), cert. denied, 393 U.S. 839, 89 S.Ct. 116, 21 L.Ed.2d 109 (1968). See cases cited in notes 10 and 11.

**17.** The applicability of which is doubtful as to these sentences, anyhow.