UNITED STATES of America, Appellee,

v.

John R. MOYNAGH, Jr., Appellant.

No. 77–1090.

United States Court of Appeals,
First Circuit.

Heard June 1, 1977.

Decided Nov. 30, 1977.

Donald L. Conn, Burlington, Mass., by appointment of the Court with whom Conn, Austin, Conn & Travaline, Burlington, Mass., was on brief, for appellant.

Michael A. Collora, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and LAY,* Circuit Judges.

LAY, Circuit Judge.

John R. Moynagh, Jr., was convicted on 10 counts of bankruptcy fraud in violation of 18 U.S.C. § 152.[1] Count I of the indict-

---

* Of the Eighth Circuit, sitting by designation.

1. 18 U.S.C. § 152 provides in pertinent part:

Whoever knowingly and fraudulently conceals from the receiver, custodian, trustee, marshal, or other officer of the court charged

ment charged that Moynagh fraudulently concealed and transferred specific property in contemplation of bankruptcy and Count II charged that he concealed the same property from the trustee in bankruptcy. The remaining counts charged that the defendant made a number of false oaths in bankruptcy. The district court imposed a general sentence of two years imprisonment, six months to be served and the balance suspended with an 18-month term on probation.

On appeal the defendant challenges the sufficiency of the evidence on each count and urges that submission of all counts to the jury resulted in cross-count prejudice requiring reversal on all counts.[2]

The government's evidence established that John Moynagh had for a number of years been engaged in the business of installing sprinkler systems, operating under the name of John Moynagh and Company. In June of 1974 Moynagh was heavily indebted to a number of banks, including Guaranty Bank and Trust Company and the Mechanics National Bank of Worcester, Massachusetts. His promissory notes to both banks were in default. On July 15, 1974, Guaranty Bank, on the basis of its security interest in accounts receivable, notified Moynagh's customers to make further payments due Moynagh directly to the bank. The Mechanics Bank also attempted to exercise its security interest by taking possession of the inventory of Auburn Pipe Fabricators, a subsidiary of John Moynagh and Company. The financial institutions with which the defendant dealt refused to honor checks drawn on his accounts, and he was unable to pay his employees. The defendant was aware of the seriousness of his financial problems and during the summer of 1974 he discussed bankruptcy with at least one acquaintance.

In July of 1974 the defendant began to deposit money he received from his accounts receivable in the checking account of his mother, Irene Moynagh. He then wrote payroll checks on that account and made withdrawals for his personal use and business expenses from that account.

During the fall of 1974 the business operations of John Moynagh and Company terminated. However, at this time the defendant became highly involved in the activities of National Sprinkler Corporation, a sprinkler installation business incorporated

with the control or custody of property, or from creditors in any bankruptcy proceeding, any property belonging to the estate of a bankrupt; or

Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding; or

. . . . .

Whoever, either individually or as an agent or officer of any person or corporation, in contemplation of a bankruptcy proceeding by or against him or any other person or corporation, or with intent to defeat the bankruptcy law, knowingly and fraudulently transfers or conceals any of his property or the property of such other person or corporation;

. . . . .

Shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. Defendant also contends that some of the counts were mutually exclusive and therefore erroneously submitted. This allegation was never raised in the trial court and is not properly before this court unless plain error exists. We find no plain error.

The counts which the defendant attacks as mutually exclusive all charged that the defendant made a false oath with regard to his interest in National Sprinkler Corporation. The defendant was convicted on each of the counts. The District of Columbia Circuit has stated the following general rule for determining when multiple convictions can be considered reversible error:

Multiple convictions cannot be said to constitute cause for reversal unless either the crimes are truly inconsistent or the circumstances are such as to make it reasonable to conclude that the jury was unable to keep the various matters separate or may have been confused as to what constituted the particular offenses. Without such a showing there is no reasonable possibility that the defendant was prejudiced.

*Fuller v. United States,* 132 U.S.App.D.C. 264, 297, 407 F.2d 1199, 1232 (1968) (on rehearing en banc), *cert. denied,* 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969).

We have examined each count and conclude that none of the counts were necessarily inconsistent and there exists no indication that the jury would be confused as to the elements of each offense.

by his son, John R. Moynagh III. National Sprinkler began operations in the fall of 1974 and its business consisted mainly of referrals from the defendant.

In March of 1975 the defendant filed a voluntary petition in bankruptcy.

### Sufficiency of the Evidence.

■ The government questions the defendant's right to challenge the sufficiency of the evidence on the ground that the defendant did not expressly move for an acquittal on all counts at the close of the trial. The record demonstrates, however, that the trial judge considered the sufficiency of the evidence on all counts as if such a motion had been made. Under the circumstances we think the record sufficient to raise the issue on appeal.[3]

To facilitate understanding we discuss the challenged counts by subject matter.

### Counts III, IV, VI, VII, IX and XII.

Counts III, VI and VII related to the business operations of the defendant's company. Count III of the indictment charged that the defendant falsely stated his income for 1974 as $9,600 on the statement of affairs, when in fact his 1974 income exceeded $32,000. Count VI charged that the defendant falsely stated the termination date of his business operations on the statement of affairs as July of 1974, when in fact he continued to pay employees through October of 1974 and subcontracted work in August of 1974. Count VII charged that the defendant falsely stated the amount of personal withdrawals from his business account during the year prior to bankruptcy as $20,800 when in fact the amount was approximately $65,000.[4]

Counts IX and XII related to defendant's dealings with his son's company, National Sprinkler Corporation. Count IX charged that the defendant failed to list a deposit of $3,900 with National Sprinkler on the schedule of assets. This allegation related to the proceeds of the sale of the defendant's Cadillac four days prior to bankruptcy, which the defendant deposited in the National Sprinkler account. Count XII charged that the defendant failed to disclose his financial interest in National Sprinkler Corporation on the schedule of assets. We are satisfied that the evidence adduced by the government supported an inference that the defendant had some financial interest and control in National Sprinkler.

Count IV of the indictment charged that the defendant failed to reveal his interest in National Sprinkler and two boats on the statement of affairs filed in bankruptcy. The government's evidence showed that for a number of years prior to 1974 the defendant had maintained a power boat and a sailboat at the Harwich Port Boat Works on Cape Cod. In July of 1974 the defendant notified the boat works that the boats had been sold the previous January to the Marlin Boat Company, a corporation whose sole stockholders were the defendant's mother and his son. Testimony indicated that the actual value of the boats was around $16,000, but the bill of sale recited a purchase price of $5,000. The defendant explained that the transfer was made to enable his son to use the boats for a chartering service. The boats were registered in the name of Marlin Boat Company on September 27, 1974.

During July of 1974 the defendant paid most of the indebtedness which had accrued for maintenance on the boats. However, the proprietors of the boat works testified

---

**3.** The government urges, in view of the general sentence imposed, that this court follow the concurrent sentence doctrine and affirm the judgment based upon a finding of sufficient evidence as to any one count. We decline to do so. We are satisfied that the collateral consequences of defendant's conviction on counts unsupported by sufficient evidence could possibly inure to defendant's future detri-

ment. *See Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). *Cf. Vanetzian v. Hall,* 562 F.2d 88 (1st Cir. 1977).

**4.** The defendant admitted on cross-examination that his withdrawals from business accounts totaled at least $30,000, and the government produced evidence from other sources which could place the figure as high as $50,000.

that in September of 1974 the defendant still owed around $3,500 on his account. Other creditors filed liens against the boats totaling $1,500 in September of 1974, and the boat works then filed a maritime lien for its bill. The defendant personally satisfied the other creditors' liens, and the proprietors of the boat works decided not to force a sale to satisfy their lien. Although the defendant requested that the boats be made ready for the 1975 season in the spring of that year, no further services were performed and the boats were eventually auctioned in 1976. When the defendant completed the schedules in bankruptcy in June of 1975, he failed to list any interest in the boats.

■ The charge in Count IV of the indictment presents a close question. When the defendant failed to list an interest in the boats on the statement of affairs in June of 1975, title had been transferred and registered in the name of Marlin Boat Company. However, registration of title is not always conclusive of ownership. *Pallett v. United States,* 228 F.2d 671, 673 (5th Cir. 1956). Even if the defendant retained only an equitable interest in the boats, failure to list that interest could support the charge. *See United States v. Schireson,* 116 F.2d 881, 883 (3d Cir. 1940); *Goetz v. United States,* 59 F.2d 511, 512 (7th Cir.), *cert. denied,* 287 U.S. 649, 53 S.Ct. 95, 77 L.Ed. 561 (1932). *See also Duggins v. Heffron,* 128 F.2d 546, 548 (9th Cir. 1942).

We conclude that there existed sufficient evidence for the jury to find that the defendant retained an equitable interest in the boats and that the court did not err in submission of Count IV to the jury.

■ We find sufficient evidence to sustain the conviction on these six counts. In each instance it was undisputed that the defendant made the misstatement or omission set out in the indictment. In light of all the facts and circumstances established by the government, these counts were properly submitted to the jury. Furthermore, the jury could reasonably have concluded that the defendant acted knowingly and fraudulently in each instance. *See Meth-*

*eany v. United States,* 390 F.2d 559 (9th Cir.), *cert. denied,* 393 U.S. 824, 89 S.Ct. 81, 21 L.Ed.2d 94 (1968). We therefore affirm the convictions on Counts III, IV, VI, VII, IX and XII.

*Count XI.*

■ Count XI charged that the defendant failed to list on his schedule of assets a debt owed him by Cannon's, Incorporated, in the amount of $2,200. We find that the conviction under this count should be set aside.

The defendant had performed certain contracting work for Cannon's, Incorporated, in early 1974 for which only partial payment had been received. In July of 1974 Cannon was advised to make further payment on the balance due Moynagh to the Guaranty Bank pursuant to the assignment of the account receivable. Payment was in fact made to the bank in April 1976. The government made no contention that Moynagh had not assigned all his right, title and interest in the account to the bank, and there was no evidence that the defendant had any equitable interest or title in the account on the date the schedule of assets was filed. The assignment was valid under Massachusetts law. Under the controlling Massachusetts law, Guaranty Bank had the sole right to receive payment on this account after it notified Cannon of its security interest in July of 1974. Mass.Gen. Laws Ann. ch. 106, § 9–318. *See Framingham Welding & Engineering Corp. v. Bennie Cotton, Inc.,* 361 Mass. 866, 281 N.E.2d 236 (1972). We conclude that the defendant could not have been found guilty of a *fraudulent* omission under the bankruptcy laws for failure to disclose this debt.

*Counts I and II.*

■ The defendant challenges the sufficiency of the evidence on each specification under Counts I and II. Count I charged that from June 1, 1974, to June 1, 1975, the defendant knowingly and fraudulently concealed and transferred the following items in contemplation of bankruptcy

and with intent to defeat the bankruptcy laws: (1) monies in the amount of $45,000; (2) an $8,000 investment in National Sprinkler Corporation; (3) a $15,000 power boat; (4) a $1,000 sailboat; and (5) an account receivable due from Cannon's, Incorporated, in the amount of $2,200. Count II charged that after March 19, 1975, the defendant knowingly and fraudulently transferred and concealed from the trustee in bankruptcy the last four items listed in Count I. We conclude that Moynagh's conviction on these counts cannot be sustained because each count contains a specification charging concealment of the Cannon account receivable. As we have discussed, the defendant did not retain any right, title or interest in this account and no evidence was introduced which supports any fraudulent concealment or transfer concerning the account either before or after bankruptcy.

The trial court instructed that where a series of acts were charged as crimes in one count, a finding that the defendant did *any one* of the acts would warrant a verdict of guilty on the count. The difficulty here is that the specification regarding the Cannon debt was improperly submitted to the jury and therefore the verdict is ambiguous. Under similar circumstances the court observed in *United States v. Natelli*, 527 F.2d 311 (2d Cir. 1975), *cert. denied*, 425 U.S. 934, 96 S.Ct. 1663, 48 L.Ed.2d 175 (1976):

> A difficulty does arise, however, if it is found as a matter of law that there should have been a directed verdict for a defendant on one of the specifications for insufficiency of evidence. The verdict then becomes ambiguous, for the jury could have rejected the specification which the appellate court holds sufficiently proved, and have convicted only on the specification held to be insufficiently proved. In that event, there seems to be no alternative to remand for a new trial. That is the general principle.

*Id.* at 325, *citing Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931). *See also United States v. Driscoll*, 449 F.2d 894, 898 (1st Cir. 1971), *cert. denied*, 405 U.S. 920, 92 S.Ct. 948, 30 L.Ed.2d 790 (1972); *United States v. Adcock*, 447 F.2d 1337, 1339 (2d Cir.), *cert. denied*, 404 U.S. 939, 92 S.Ct. 278, 30 L.Ed.2d 252 (1971).

The government urges that the defendant did not specifically move for withdrawal of certain specifications not supported by the evidence and therefore has not preserved the point on appeal. *See United States v. Brecht*, 540 F.2d 45, 50 n. 10 (2d Cir. 1976), *cert. denied*, 429 U.S. 1123, 97 S.Ct. 1160, 51 L.Ed.2d 573 (1977); *United States v. Mascuch*, 111 F.2d 602, 603 (2d Cir.), *cert. denied*, 311 U.S. 650, 61 S.Ct. 14, 85 L.Ed. 416 (1940). The record, however, shows that the trial court considered each specification separately in determining whether to grant or deny the defendant's motion to withdraw the entire count from the jury. Under the circumstances we feel the issue was adequately preserved for our consideration. *See United States v. Natelli, supra* at 328 (on second rehearing). We find that the convictions on Counts I and II must be vacated and remanded for a new trial.

*Count VIII.*

Count VIII charged that defendant failed to list the Harwich Port Boat Works as an unsecured creditor and that this omission constituted a false oath in bankruptcy. In view of the maritime lien filed against the boats to secure the debt to the boat works, we conclude that as a matter of law defendant's failure to list that company as an *unsecured* creditor would not support the charge set out in Count VIII. We therefore vacate the conviction on that count.[5]

---

5. Count VIII contained a further charge that the defendant failed to list Joseph Cashman as an unsecured creditor. Since the specification regarding the boat works was insufficient as a matter of law, the count must be reversed regardless of the validity of this charge.

805

*Cross-Count Prejudice.*

The defendant's final contention is that the submission of counts unsupported by the evidence created a cross-count prejudice rendering guilty verdicts on all counts invalid. He cites no specific evidence of prejudice or confusion on the part of the jury. The trial court instructed the jury that they should consider each count separately. We conclude that the defendant has made no showing sufficient to require reversal of the convictions on all counts. As the Fifth Circuit recognized in *United States v. Parr,* 509 F.2d 1381 (5th Cir. 1975): "[I]n all multi-count indictments there is the possibility of an inference of guilt from one count to another." *Id.* at 1384. Only in an unusual case will the possibility of such prejudice be grounds for reversal. *See also United States v. Meriwhether,* 486 F.2d 498, 504 (5th Cir. 1973), *cert. denied,* 417 U.S. 948, 94 S.Ct. 3074, 41 L.Ed.2d 668 (1974).

*Sentencing.*

The trial court imposed a general sentence of two years with the condition that only six months be served. Although the jury returned a guilty verdict on 10 counts, the trial court did not render a separate sentence on each count. The proper procedure is to do so and specify whether the sentences are to be served concurrently or consecutively. *See United States v. Kenny,* 462 F.2d 1205, 1229 (3d Cir.), *cert. denied,* 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972); *Peoples v. United States,* 412 F.2d 5, 6 (8th Cir. 1969); Fed.R.Crim.P. 32(b); 5 L. Orfield, Criminal Procedure Under the Federal Rules § 35.20 (1967); 2 C. Wright, Federal Practice and Procedure: Criminal § 527, at 418 (1969).[6] In the present case neither the oral nor the writ-

ten judgment particularized the sentence as to individual counts. In fact the written judgment creates further ambiguity in that it recites only the language contained in Count I.[7]

We have ordered the conviction under Count XI vacated and dismissed. The convictions under Counts I, II, and VII are vacated and a new trial is granted as to each of those counts. In view of our reversal of numerous counts upon which the general sentence is based, it becomes necessary to remand for sentencing on Counts III, IV, VI, VII, IX and XII on which the verdicts have been affirmed.

IT IS SO ORDERED.

---

6. The Bench Book for United States District Judges recommends: "Sentence offender for each count upon which he has been convicted and designate as to each sentence whether it is concurrent or consecutive." The Federal Judicial Center, Benchbook for United States District Judges § 1.16(3)(a) (1969).

7. The judgment order recites a finding that: "Defendant has been convicted as charged of

the offense(s) of in contemplation of bankruptcy proceedings by and against him, and with the intent of defeating the bankruptcy laws, did knowingly and fraudulently transfer and conceal property . . . to wit, monies . . . ., supplies and inventory . . . in violation of Title 18, United States Code, Section 152."