UNITED STATES of America,
Plaintiff-Appellee,

v.

George B. PARR, Defendant,

Mary Elizabeth Ellis Saenz,
Intervenor-Appellant,

Clinton Manges, Surety,
Movant-Appellant.

No. 78–2125.

United States Court of Appeals,
Fifth Circuit.

May 3, 1979.

R. E. Lopez, Jr., A Professional Corp., Alice, Tex., for Saenz.

Raul Garcia, Alice, Tex., for Manges.

J. A. Canales, U. S. Atty., James R. Gough, George A. Kelt, Jr., Asst. U. S. Attys., Houston, Tex., for plaintiff-appellee.

Before BROWN, Chief Judge, and AINSWORTH and DYER, Circuit Judges.

DYER, Circuit Judge:

This appeal requires us to take a second look at the judgment of the district court reaffirming a forfeiture of $75,000 bail with a remission of $35,000 of the forfeiture to a third party Manges.[1] We conclude that a forfeiture in excess of $10,000.00 is an abuse of discretion and therefore vacate and remand with directions to remit the balance of the forfeiture of $65,000.00 to Manges.

The facts are set forth at length in our prior opinion so we capsulate them here. Parr was convicted of income tax evasion and other offenses. Pending appeal he gained his liberty by posing a bond in the amount of $75,000.00 without surety. The bond was accompanied by two cashiers checks totalling $75,000.00 purchased by Clinton Manges with his own funds and deposited into the registry of the court. The district court clerk's memorandum recited that upon disposition of the case the deposit should revert to Manges. Parr's conviction was affirmed on direct appeal on March 24, 1975. *United States v. Parr,* 509 F.2d 1381 (5th Cir. 1975).

The government, having received reports that Parr was threatening violence, moved the court on March 28, 1975, for a show cause order to terminate the bond. The district court ordered Parr to appear at 4:00 P.M. March 31, 1975. Parr was personally told of the order by his attorneys and stated that he would attend, but he failed to do so.

The district court continued the hearing until 5:00 P.M. and, upon Parr's failure to appear, granted the government's motion for a forfeiture of the bond. The court reset the proceedings for 2:00 P.M. the following day to hear any explanation that Parr might make. Parr committed suicide at his ranch about 7:30 the next morning and his body was found four hours later.

After an evidentiary hearing in which Parr's widow was allowed to intervene as executrix of his estate, the court affirmed the forfeiture of $75,000 but remitted $35,000 to be paid to Manges. On appeal we vacated and remanded for further proceedings. Upon remand the district court concluded that Parr was not insane when he shot himself and his non-appearance was therefore willful. The court found that the government was prejudiced because of its

---

1. On the prior appeal we found a number of questions posed which had not been decided by the district court. We vacated and remanded the cause for further proceedings. *United States v. Parr,* 560 F.2d 1221 (5th Cir. 1977).

inability to see Parr punished; that it spent $2,000 searching for Parr; that the thirteen day trial and appeal was costly to the government; and that Parr's criminal prosecution was important because it involved eight counts of income tax evasion and false income tax returns. The court further found that Manges was entitled only to the amount of the cash deposit that Parr would have been entitled to if he were alive. The court sustained the forfeiture of $75,000 and ordered a remission of $35,000 to be paid to Manges.

Manges asserts error in the refusal of the district court to order the entire cash deposit returned to him under the terms of the agreement with the clerk of court. Saenz (the substituted administratrix of Parr's estate) contends that the district court's finding that the search expense was $2,000.00 is clearly erroneous, and that the remitted $35,000 should have been paid to Parr's estate instead of to Manges. Both Manges and Saenz argue that there was abuse of discretion in ordering so large a forfeiture.

We need not labor long with Manges' argument that since he did not sign the bond and was therefore not bound by its provisions he is entitled to the entire $75,-000. In short his position is that his undertaking cannot be enlarged by the circumstances existing at the time of default, and since Parr's conviction was affirmed and he then died there was a disposition of the case. We disagree.

■ The order under which Parr was at liberty was for "cash or surety". Manges made the cash available. No other purpose could be served in requiring this cash deposit than that it would be available to satisfy a forfeiture in the event of a willful default of the principal. The purpose of bail is to secure the presence of the defendant, *Smith v. United States,* 357 F.2d 486 (5th Cir. 1966), and " 'like any other contract a bail bond should be construed to give effect to the reasonable intentions of the parties.' " *United States v. Miller,* 539 F.2d 445, 447 (5th Cir. 1976), citing *United States v. Gonware,* 415 F.2d 82 (9th Cir. 1969). Manges was well aware that his

deposit of cash was to free Parr from incarceration subject to the terms of the bond signed by Parr. It is a hollow argument for Manges now to assert that although there was a willful non-appearance by Parr, his subsequent death was a disposition of the case. That Manges was legally liable under the conditions as they existed at the time of the forfeiture is unassailable. The fact that Parr later died and the criminal proceeding against him abated does not constitute a defense to Manges in the forfeiture proceeding. *Detroit Fidelity & Surety Co. v. United States,* 59 F.2d 565 (8th Cir. 1932).

■ Saenz attacks the district court's finding that the search expense was $2,000 as clearly erroneous. Conceding that the FBI expense was $1,000 it is argued that the time expended by the United States Marshals multiplied by their hourly rate could not have been over $126.00. Admittedly, the exact dollar expense evidence was sparse, but we know that the search could not have been carried on without the use of government vehicles, long distance telephone communications and the like. We cannot fault the district court for not requiring a dollar mark to be put on these and other untangibles. There is sufficient support in the record to sustain the finding as not clearly erroneous. And, of course, the government's expense is not the sole, proper criterion to be considered in remission cases. The "degree of blatancy or extenuating circumstances in defendant's bond violation, are necessary considerations in the matter of a discretionary remission." *United States v. Foster,* 417 F.2d 1254, 1258 (7th Cir. 1969).

■ Saenz next contends that the district court erred in directing that the $35,000 remission be paid to Manges instead of to the Parr estate. Upon the premise that there is a finding that there was no disposition of the case upon the death of Parr which required the *entire* amount of the fund deposited to be rebated to Manges in compliance with the agreement made for the court by its clerk under which the deposit was made, Saenz concludes that the agreement no longer controls the disposi-

tion of the funds and Manges' claim is simply one arising from his relationship with Parr as a creditor. It follows, it is argued, that under the probate laws of Texas the decedent alone is entitled to recover property held for or on his behalf and Manges must therefore look to the estate for satisfaction like any other creditor.

The government, while disclaiming any direct financial interest in the matter, aligns itself with the Parr estate because it would foster better bail practices were we to hold that cash furnished by a person who does not subscribe the bond as a surety should be deemed in law to be simply a personal loan to the principal, the result being that Manges should be regarded as no more than an unsecured creditor of the Parr estate. We disagree with Saenz reasoning, and with the government's suggestion that we overturn the provisions of the Bail Reform Act and the local rule of the district court.

It is anomalous to argue as Saenz does that since Manges is not entitled to a return of the *entire* amount deposited the agreement no longer controls the disposition of a *partial* remission. Clearly it was the intention of all concerned that upon a disposition of the case Manges was to receive his deposit or so much of it that was subject to remission. The title to the funds deposited by Manges did not pass to Parr. *Jacobson v. Hahn,* 88 F.2d 433 (2nd Cir. 1937).

In *United States v. Bursey,* 515 F.2d 1228 (5th Cir. 1975) the court in dealing with the disposition of a cash deposit by a third party under 18 U.S.C.A. § 3146(a)(3) said, "Nothing in § 3146 or any other provision of the Bail Reform Act of 1966 requires that cash deposited under § 3146(a)(3) be property of the party bonded, and we discern no basis in reality or in law for a presumption that it be his. (Citations omitted). Upon the performance of the conditions of release, then, a third party supplying a § 3146(a)(3) deposit would ordinarily be entitled to the return of his deposit, in accordance with the explicit language of that provision." (footnote omitted). *Id.* at 1235. This sound reasoning should apply with equal force to the remission of funds under § 3146(a)(4) since the only difference between the subsections is that (3) procedures were intended to be the less onerous of the two bonding alternatives. Indeed, as Judge Goldberg noted in *Bursey,* the Southern District of Texas Rules were meant to cover such a situation. Rule 22C provides that "When . . . the Clerk . . . shall receive cash . . . as security, such . . . Clerk . . . shall give a receipt *to the person from whom same are received* . . . ."

"Such a receipt furnished by the Clerk, or the claim for the return of such deposit, is not assignable, and return will be made only to the depositor."

"E. . . . where a defendant has obtained his release by depositing a sum of money . . . such defendant, *or the one by whom the deposit was made on his behalf,* shall be entitled to a refund thereof when the conditions of the bond have been performed and the defendant has been discharged from all obligations thereon. . . ." (emphasis added). It would run counter to the intent of the rule, as well as to inherent fairness, to order a remission of a forfeiture paid to the defendant (or his estate) instead of to the third party who made the deposit of the funds. The district court was correct in ordering the remission be paid to Manges.

We turn now to the question of discretion exercised by the District Court in ordering a forfeiture of $40,000 in the light of our words of caution on remand that "whatever must be done is not overdone." *Parr, supra* at 1224. The district court found that the default of Parr was willful and the government was prejudiced because of its inability to see Parr punished; the government spent at least $2,000 searching for Parr; there had been a thirteen day trial and appeal which cost the government time and money; and the criminal prosecution of Parr involved eight counts of income tax evasion and false income tax returns.

It is clear that we cannot substitute our discretion for that of the district court. The standard of review in bond for-

feiture and remission cases is whether the action of the district court was arbitrary and capricious. *United States v. Kirkman,* 426 F.2d 747 (4th Cir. 1970); *United States v. Foster,* 417 F.2d 1254 (7th Cir. 1969); *United States v. Davis,* 202 F.2d 621 (7th Cir. 1953). Discretion cannot be exercised "arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Langnes v. Green,* 282 U.S. 531, 541, 51 S.Ct. 243, 247, 75 L.Ed. 520 (1931); *Smaldone v. United States,* 211 F.2d 161 (10th Cir. 1954).

The purpose of a bail bond is not punitive. Its object is not to enrich the government or punish the defendant. *Dudley v. United States,* 242 F.2d 656 (5th Cir. 1957); *United States v. Davis, supra.* Nor can it be "used as a balm to soothe the disappointment resulting from the inability to punish and rehabilitate." *Parr, supra* at 1224. The "forfeiture ought to bear some reasonable relation to the cost and inconvenience to the government of regaining custody . . . ." *Kirkman, supra,* the amount of delay caused by the defendants default and the stage of the proceedings at the time of disappearance; *United States v. Fook Dan Chin,* 304 F.Supp. 403, (S.D.N.Y. 1969), the willfullness of the defendant breach of conditions and the prejudice suffered by the government, *United States v. Nell,* 169 U.S.App.D.C. 380, 515 F.2d 1351 (1975); and the public interest and necessity of effectuating the appearance of the defendant. *United States v. Agueci,* 379 F.2d 277 (2nd Cir. 1967). "Neither frustration nor its kinsman vindictiveness should be of weight in tipping the scales by which the elements of the court's discretion is weighed." *Parr, supra* at 1224.

We briefly chronicle Parr's actions to measure them against these tenets. He was present for trial, sentencing and all other proceedings before and after trial from his arraignment on June 19, 1973 until the day before he died on March 31, 1975. The forfeiture was declared because of his non-appearance at a bond revocation hearing which temporarily inconvenienced the court and the prosecutors, but not a jury or witnesses, for fourteen and a half hours (until his body was discovered). The only prejudice caused the government was the time and expense of search and the delay and inconvenience caused by Parr's default. There was no need for further proceedings because the cause abated on Parr's death. *Crooker v. United States,* 325 F.2d 318 (8th Cir. 1963). While there is a public interest in requiring that the order of the court be obeyed vindictiveness must play no part in measuring what is a just punishment for the defendant's default.

The present judgment on the bond, which was no longer needed shortly after the hearing, tends to shock our collective conscience. It was an abuse of discretion, based upon some impermissible factors, which we cannot permit to stand. The record will support a forfeiture of no more than $10,000. Accordingly we vacate the judgment of the district court and remand the cause with directions to forfeit $10,000 of the cash deposit and remit the balance of $65,000 to Manges.

Vacated and Remanded with directions.