UNITED STATES of America

v.

Nicolas GONZALEZ.

Criminal No. L–94–180.

United States District Court,
S.D. Texas,
Laredo Division.

Dec. 6, 1995.

---

David Almaraz, Laredo, TX, for defendant.

Mary Lou Castillo, Asst. U.S. Attorney, Laredo, TX, for U.S.

## MEMORANDUM AND ORDER

KAZEN, District Judge.

Pending is the Government's Motion for Judgment of Default of Bond, filed on January 13, 1995. (Docket n. 19). The Defendant's corporate surety, Frontier Insurance Co. ("Frontier"), claims that Defendant Gonzalez is deceased and requests that the Court set aside the forfeiture and deny the Government's motion. (Docket n. 35).

## BACKGROUND

The Defendant pled guilty to possession of marijuana with intent to distribute on November 16, 1994. On December 22, 1994, Frontier posted a $50,000 surety bond for the Defendant's release pending sentencing. As a condition of the Defendant's release, the Court imposed certain travel restrictions on the Defendant. He was allowed to return to his home in Hayward, Ca. and to travel within a radius of 50 miles from there, and he was ordered not to depart from that area without the Court's permission except to attend Court and to consult with his attorney. The Defendant was further ordered to report to the Pretrial Services Office in Oakland, California on January 6, 1995. The Defendant failed to report as instructed and an arrest warrant was subsequently issued on January 10, 1995. The Government then filed the pending motion on January 13, 1995. Ruling on this motion was postponed for several months at Frontier's request, with no Government opposition, on the ground that the surety was actively attempting to substantiate and document rumors that Defendant had died in Mexico on February 13, 1995. Frontier supplied the Court with photographs of the Defendant's alleged burial site in Mexico and a Mexican Certificate of Authentication attesting to Defendant's death. The certificate is signed by a Mexican physician who purportedly performed a post-mortem examination of the Defendant and identified the Defendant from booking photos supplied by Frontier. The Government argues that there is insufficient proof that the Defendant died as alleged by Frontier. In the alternative, the Government asserts that even if the Defendant is deceased, the Court should nevertheless refuse to set aside the forfeiture because of the Defendant's breach of the travel restrictions imposed as a condition of the bond.

## LEGAL ANALYSIS

The Defendant's release was conditioned upon the execution of the bond in order to secure his appearance as directed by the Court. See United States v. Skipper, 633 F.2d 1177, 1180 (5th Cir.1981). The rules of

criminal procedure direct the Court to declare a forfeiture of the bail after any breach of condition of a bond. FED.R.CRIM.P. 46(e)(1); *see also* 18 U.S.C. § 3146(d). After forfeiture is declared, Rule 46(e)(2) gives the Court discretion to set aside the forfeiture, in whole or in part, if the surety subsequently surrenders the absent defendant into custody or if justice does not require forfeiture. The issue is whether the Court should exercise its discretion to set aside the forfeiture. Both parties assume that the bond has indeed been forfeited. Since the Government's motion was filed almost immediately after the warrant order was signed, and since the Defendant never did appear thereafter, a forfeiture was never officially declared on the record. The Court now ORDERS, pursuant to Rule 46(e)(1), that Defendant's bond is forfeited based on his failure to appear as ordered on January 6, 1995 at the Pretrial Services Office in Oakland, California, and his subsequent continuous nonappearance.

■■■ As the party challenging the bond forfeiture, Frontier bears the burden of establishing grounds for setting it aside. *United States v. Roher*, 706 F.2d 725, 727 (5th Cir.1983). Frontier claims that its inability to produce the Defendant due to his alleged death presents the type of circumstance, contemplated by Rule 46(e)(2), under which "justice does not require the forfeiture." Basically, Frontier argues that because the Defendant is deceased, neither the policy underlying the bail system nor justice is served by enforcing the forfeiture.

The Fifth Circuit has indicated that the purpose of bail is not to enrich the government or punish the defendant but only to insure his presence at trial. *United States v. Parr*, 594 F.2d 440 (5th Cir.1979). In a more recent case, however, the Court held that "a bond forfeiture may be ordered under Rule 46 for violations of *conditions of the bond other than nonappearance.*" *United States v. Terrell*, 983 F.2d 653, 655 (5th Cir.1993) (emphasis added). In *Terrell*, the Court held that a travel restriction "relates" to the defendant's appearance because it makes it easier and less costly for the government to locate the defendant should he fail to appear. *Id.*; *United States v. Dunn*, 781 F.2d 447,

451 (5th Cir.1986) ("[a] district judge has the power to declare a forfeiture of bond for breach of travel restrictions imposed as a condition of release on bail").

Assuming, *arguendo*, the veracity of the facts alleged by Frontier, the Court nevertheless finds sufficient justification for the forfeiture of the bond in the present case. Indeed, this is not a situation where the defendant died before his scheduled appearance date. *See United States v. Costello*, 47 F.2d 684, 686 (6th Cir.1931) (death before the appearance date will exonerate the surety on bail bond). Frontier concedes that the Defendant was alive on January 6, 1995, when he failed to appear as ordered in Oakland, California. The Defendant's nonappearance alone justifies the forfeiture. Furthermore, the fact that the Defendant was apparently in Mexico evidences a willful violation of the travel restrictions imposed as a condition of the appearance bond. Thus, under *Terrell*, another independent legal basis exists for the forfeiture.

Frontier counters that while the declaration of forfeiture may have been proper, the Defendant's death should nevertheless justify setting aside the forfeiture. As a preliminary matter, the Court is not convinced that Frontier has supplied sufficient and reliable evidence of the Defendant's death. A Mexican physician concluded that the Defendant died of pulmonary emphysema, bronchial asthma, and chronic alcoholism but yet, the physician conducted an examination of only the "exterior of a cadaver." (Docket n. 32). The Court finds the purported death certificate to be somewhat suspect. Likewise, the grave site pictures have little, if any, probative value regarding the Defendant's alleged death.

The Court need not decide whether Frontier has proved the Defendant's death, however, because the Fifth Circuit has held that "[w]hile death of the principal is one relevant factor in considering remission, it does not require remission where other factors outweigh it." *Roher*, 706 F.2d at 727 (citation omitted). The willfulness of the defendant's breach of the bond's express conditions should also be considered. *Id.*; *Parr*, 594 F.2d at 442. Although addressing remission,

the *Roher* court's analysis is nevertheless instructive to the present inquiry concerning the setting aside of the forfeiture. Frontier has supplied no credible evidence that the Defendant was abducted or in any other way forced to Mexico against his will. Therefore, even if the Court assumed that Defendant is deceased, his willful breach of the travel conditions imposed upon him by this Court as a condition of his release weighs against setting aside the forfeiture.

Frontier was legally liable for the full amount of the bond at the time the Defendant failed to appear as directed in Oakland, California. The fact that Defendant may have died and "the criminal proceeding against him abated does not constitute a defense" to Frontier in the present forfeiture proceeding. *Parr*, 594 F.2d at 442.

 The bond in this case, as in all cases, was in effect a contract between the government and the accused. *Dunn*, 781 F.2d at 451 ("a Rule 46(e) forfeiture proceeding is based on an executed contract wherein the defendant has an explicit agreement with the court to abide by the conditions of his bail bond or suffer the loss of his property which secures the bail bond"). The Defendant was released from confinement upon his promise to appear when required. When he breached that promise, he and Frontier essentially became liable for liquidated damages to the Government. *See United States v. Toro*, 981 F.2d 1045, 1048 (9th Cir.1992); *United States v. Plechner*, 577 F.2d 596, 598 (9th Cir.1978) ("[u]pon forfeiture, the surety becomes the government's debtor").

▇ Frontier has asserted that it spent considerable time and money attempting to locate the Defendant and to substantiate his death. The Government's brief, filed August 14, 1995, seems to confirm that claim as does the Court's personal observations. Frontier apparently retained a Mexican law firm to search public records in Mexico and hired a private investigator who travelled to Mexico to attempt to verify the records.

The Court acknowledges Frontier's efforts and the important role sureties sometimes play in our system of criminal justice. Corporate sureties, such as Frontier, which de-

vote their own resources to track and apprehend fugitives, can significantly assist the understaffed United States Marshal's personnel in returning those individuals to face the consequences of their actions.

In the instant case, the Court finds that Defendant's breach of the travel restrictions and subsequent nonappearance were willful. In light of Frontier's efforts to locate him, however, and because of the uncertainty as to whether the Defendant is still alive, the Court concludes that a partial set aside of the forfeiture is warranted.

It is therefore ORDERED that the bond forfeiture is partially set aside. It is further ORDERED that United States of America have judgment of default of bond of Nicolas Gonzales, principal, and that the United States do have and recover from Nicolas Gonzalez and Frontier Insurance Company, jointly and severally, the sum of $35,000, together with interest on such sum at the rate of 5.45 percent per annum, computed daily and compounded annually until paid in full from date of judgment, and costs of this proceeding.