## UNITED STATES v. SOUCY et al.
### Cr. No. 6842.

District Court, D. Minnesota,
Third Division.

May 8, 1945.

R. Edison Barr, of St. Paul, Minn., for petitioner.

·Alfred A. Donaghue, of Minneapolis, Minn., for Helen S. Ackerman.

NORDBYE, District Judge.

The petition filed by Lou J. Sansome sets forth that she and Helen S. Ackerman, on the 11th day of February, 1943, became sureties on the bond of one Lawrence A. Soucy in a criminal proceeding entitled "United States of America v. Lawrence A. Soucy." It appears that on the 13th day of April, 1943, the default of the said principal and the said sureties was entered of record in said criminal proceeding, and on the 30th day of June, 1943, on motion of the United States of America in the criminal proceeding, judgment was en-

tered in the sum of $1,500 against the defendants Lawrence A. Soucy, Helen S. Ackerman, and Lou J. Sansome. The application of the defendants for reinstatement of said bond and the remission of all or a part of the sum was on the same day denied. Pursuant to an execution issued on said judgment on September 19, 1944, Lou J. Sansome paid the United States, on November 2, 1944, the full principal amount of said judgment, plus interest accrued thereon to the date of payment, or a total of $1,620. At the time of the payment of said judgment, and for the claimed purpose of keeping said judgment in full force and effect as to her co-surety, Lou J. Sansome, following the provisions of Section 9410, Mason's Minnesota Statutes, filed with the Clerk of this Court a claim for contribution against the said Helen S. Ackerman for one-half of the principal amount of said judgment and the accrued interest thereon, totaling $810.

It appears from the petition that on February 11, 1943, at the time of the execution of said bond upon which the judgment of forfeiture was entered, Helen S. Ackerman, in order to qualify herself as surety, justified before a United States Commissioner, disclosing on her oath in writing, that she was the owner of certain property at 2016 Laurel Avenue, Minneapolis, Minnesota, legally described as Lot Ten (10), Block Two (2), Bryn Mawr, according to the plat thereof on file and of record in the office of the Register of Deeds in and for Hennepin County, Minnesota. It is the contention of Lou J. Sansome that before she signed the bond referred to, said disclosure regarding the property owned by Helen S. Ackerman was made in her presence and that she relied upon such disclosure and signed the bond with Helen S. Ackerman because of her belief and reliance that her said co-surety was the owner of the property referred to.

It further appears that on December 29, 1944, Lou J. Sansome obtained and caused an execution to be issued out of the Clerk's office on her claim for contribution, not only against Ackerman, but against Soucy, the principal, said execution being issued on the judgment entered as against her, Ackerman, and Soucy by the United States of America. The execution was returned unsatisfied. It is set forth that, subsequent to the execution of said bond, and subsequent to a demand made upon Helen S.

Ackerman for payment of her co-surety liability to the said Lou J. Sansome, the said Helen S. Ackerman moved into the property at 2016 Laurel Avenue and now claims said property to be her homestead, exempt from any execution or lien or otherwise, by reason of any claim that the said Lou J. Sansome may have against her. It is represented that the said Helen S. Ackerman has altered her property status from non-exempt to exempt property for the purpose of defrauding Lou J. Sansome and hindering and delaying the collection of said judgment. The petitioner therefore seeks an order of this Court declaring void as to Lou J. Sansome and setting aside the homestead exemption status claimed in the property at 2016 Laurel Avenue, hereinbefore referred to, by the said Helen S. Ackerman, and for a further order declaring the said property to be subject to the lien of said judgment to the extent of the rights of said Lou J. Sansome to contribution from the said Helen S. Ackerman, namely, one-half of the principal of said judgment, plus interest, totaling $810, together with interest thereon.

As heretofore noted, Helen S. Ackerman appears specially and seeks to dismiss the order to show cause on the grounds, first, that the petition fails to state a claim or cause of action against her for the reason that the United States of America is not a proper party plaintiff, and second, that the Court does not have jurisdiction over the parties or the subject matter in that no Federal question is involved in these proceedings. It may be noted that Helen S. Ackerman's true name is Helen S. Samuelson. Apparently she was married before she signed the bond referred to, but she used the name of Ackerman because the property she listed was in the name of Helen S. Ackerman, which was her name prior to her marriage.

At the outset, consideration must be given to the alleged applicability of Section 9410, Mason's Minnesota Statutes 1927. This statute provides:

"Whenever a judgment against two or more persons shall be enforced against or paid by one of them, or one of them shall pay more than his proper share as between himself and the other judgment debtors, he may continue the judgment in force for the purpose of compelling contribution; and if, within ten days after such enforcement or payment, he shall file with the clerk a notice of the amount paid by or collected from him in excess of his proper share, and of his claim for contribution, the clerk shall make a note thereof on the margin of the docket. Thereupon the judgment shall remain in effect in favor of the party filing such notice for the amount and against the party in such notice specified."

A statute substantially in the same form has been in effect in this State for many years. The present statute differs from the wording of the earlier enactment, but in so far as the question now being considered is concerned, it is to all intent and purposes the same statute. The earlier statute (Gen.Stat.1878, Chap. 66, Sec. 330) was considered by the Supreme Court of Minnesota in Ankeny v. Moffett, 37 Minn. 109, 33 N.W. 320. The intention of the framers of the statute and the evident theory of its purpose in keeping a judgment alive after payment is clearly set forth by Judge Mitchell in that decision. After discussing the right of contribution as between wrongdoers, he stated, 37 Minn. at page 111, 33 N.W. at page 321:

" * * * Where one of several defendants, against whom there was a joint judgment, paid the entire sum, there was much conflict of opinion as to whether the judgment was necessarily extinguished, or whether it could be kept on foot for the benefit of the party making the payment, (Freem. Judgm. § 472); and, even where the right of the party making the payment to the benefit of the judgment was recognized, there was great variety of practice as to the manner in which he could avail himself of it. Independently of any statute upon the subject, he was sometimes allowed to keep the judgment alive by taking an assignment of it to a third person. Some statutes required him to file his bill in equity to compel contribution, and as a part of the relief granted, in case he established his claim, he would be allowed to use the judgment for the purpose of enforcing contribution. Other statutes provided that execution for his benefit might be allowed to issue on motion in the same action. Others, again, provided that the judgment should be deemed assigned to the party making the payment, who would, by the act of payment, ipso facto be subrogated to all the rights of the judgment creditor, including the right to execution for its enforcement.

"Under this state of the law on the subject this statute was enacted. The first

part of it defines when the right of contribution or repayment exists in favor of a judgment debtor who has paid the judgment, as against his co-judgment debtors. The latter part of the section declares that 'in such cases (all those referred to in the preceding portion of the section) the person so paying or contributing is entitled to the benefit of the judgment to enforce contribution or repayment.' To this right no condition is attached, except that of filing notice of payment and claim to contribution with the clerk of the court within 10 days. The benefit of a judgment includes the means of enforcing it by execution. We think that it was the intention of the legislature that the subrogation, in such a case, by operation of law, should be as extensive as that which would occur by express assignment, and that, by payment and filing the required notice, the party paying should be ipso facto subrogated to all the right of the judgment creditor. If a party attempts to enforce contribution when he is not entitled to it, or for a greater amount than is his due, of course he could be enjoined."

 It will be observed that this statute assumes to subrogate the party paying the judgment to all the rights and privileges of the judgment creditor. In the instant case, however, the judgment creditor is the United States. It has not given any assignment of this judgment to the petitioner herein. It must be evident that a State statute cannot put private persons in the shoes of the United States as a judgment creditor, particularly in a criminal proceeding where the government is acting in its sovereign capacity. There is no statute of the United States which assumes to grant such subrogation, nor has the Court been referred to any decision which sanctions such rights in a criminal case. In fact, the Supreme Court of the United States has indicated views which are directly contrary. In United States v. Ryder, 110 U. S. 729, 4 S.Ct. 196, 28 L.Ed. 308, the court held that where a surety on a bail bond pays the amount of the bail by reason of the forfeiture of the principal, he is not entitled to be subrogated to the rights of the United States, and the court pointed out that the only subrogation is the aid that the government will render in every proper way "by process and without process, to seize the person of the principal and compel his appearance. This is the kind of subrogation which exists in criminal cases,

namely, subrogation to the means of enforcing the performance of the thing which the recognizance of bail is intended to secure the performance of, and not subrogation to the peculiar remedies which the government may have for collecting the penalty." 110 U.S. at pages 736, 737, 4 S.Ct. at page 199, 28 L.Ed. 308.

 Moreover, it seems elementary that a State statute cannot enlarge the jurisdiction of this Court, which would be the result if the petitioner were subrogated to the rights of the government as a judgment creditor. In fact, to countenance such practice would be to ingraft on a criminal proceeding a private dispute between two individuals as to which the Court has no jurisdiction. It must be remembered that the judgment herein was entered in a matter which pertains exclusively to proceedings which were invoked by the United States as against the sureties on the bond. The only jurisdiction of this Court which the United States invoked was in the criminal proceeding and the enforcement of the bail contract therein. Petitioner herein seems to proceed on the theory that not only is the State statute referred to applicable herein, but that the petition wherein she seeks to invoke the equitable jurisdiction of this Court to render void the co-surety's attempt to claim homestead rights in certain real estate is merely ancillary to the proceedings on the bond as to which this Court has jurisdiction, and urges the well-recognized principle that the power to enter judgment includes the power to issue all necessary process to enforce its payment. Phelps v. Mutual Reserve Fund Life Ass'n, 6 Cir., 112 F. 453, affirmed 190 U.S. 147, 23 S.Ct. 707, 47 L.Ed. 987. But the fallacy of petitioner's argument seems patent. Here, the entering of the judgment was for the benefit of the United States, not for the sureties on the bail bond. Their rights as between themselves by reason of anything growing out of their bail contract or by reason of any equitable rights which may inure to either one is of no concern to the government. The petition herein, therefore, cannot be properly characterized as an ancillary proceeding because when the rights of the government became satisfied by reason of its recovery on the bail bond, and when the defendant, Lawrence A. Soucy, was apprehended and sentenced to prison, which fact appears from all the files and records here-

504

in, the proceedings were finally terminated. The purpose for which the jurisdiction of this Court was invoked had been fulfilled. This proceeding is not a continuation of the action instituted by the United States. Judgment entered in behalf of the government has been fully satisfied; nothing else remains to be done. Under no conception of ancillary jurisdiction can it be said that the relief now sought by the petitioner is an outgrowth or outbranch of the motion which the United States instituted in order to obtain judgment on the bond. The proceeding in which jurisdiction of this Court was invoked has been terminated and cannot be revitalized in any dispute between the sureties themselves. This dispute is a private matter between two individuals who are both residents of this State, and has no relation to the purposes for which the original motion was instituted by the United States.

The Court does not express any opinion as to the rights of contribution under the circumstances. But if the petitioner has such rights, she must be relegated to an independent action in a court of competent jurisdiction. It follows, therefore, that the special appearance of Helen S. Ackerman will be sustained; the order to show cause will be discharged; and the petition of Lou J. Sansome will be dismissed. It is so ordered.

An exception is allowed to the petitioner.