**UNITED STATES of America, Plaintiff-Appellee**

v.

**Caesar VELEZ, et al., Defendants,**

**Wayne Spath, Appellant.**

No. 81–5890.

United States Court of Appeals, Eleventh Circuit.

Dec. 16, 1982.

* The Honorable Reynaldo G. Garza, U.S. Circuit Judge for the Fifth Circuit, sitting by designa-

Michael D. Gelety, Fort Lauderdale, Fla., for appellant.

Bruce A. Zimet, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before HILL and HENDERSON, Circuit Judges, and GARZA *, Senior Circuit Judge.

ALBERT J. HENDERSON, Circuit Judge:

This appeal is the result of the unique plight of a bondsman who justifiably believed that he had obtained a valid reduction of his obligation on a bail bond, only to discover, to his dismay, that he was liable

tion.

for the original amount. We agree with the surety that justice does not require the forfeiture ordered by the district court. We therefore vacate that order, and remand the case for remission of the amount forfeited.

■ In late 1979, Caesar Velez was arrested and indicted for the possession and distribution of cocaine, and a conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841 and 846. At the arraignment, the magistrate released the defendant on a $60,000.00 surety bond. The appellant, Wayne Spath, acting as an agent for the corporate surety (American Druggists' Insurance Company), then executed the bond, which was approved by the magistrate.

Velez subsequently petitioned the court to reduce the amount of the bond. On April 30, 1980, the magistrate held a hearing to consider the defendant's request. At that hearing, the bondsman informed the court that he was losing part of his security, a certificate of deposit belonging to the defendant's sister, and that he therefore was contemplating surrendering the defendant to the court. Instead of reducing bail, the magistrate suggested restructuring the bond by reducing the corporate surety's obligation to $30,000.00 and obtaining a $30,000.00 personal surety bond secured by a lien on property belonging to the defendant's sister. The magistrate then reset the hearing for the following day to allow the parties time to arrange for a lien on the property.

On the next day, the magistrate formally approved this proposal made at the previous day's conference. The government then inquired of the court if it would be necessary to execute a new surety bond in contemplation of this change. In response, the magistrate advised the bondsman that to

effect the modification, it would be necessary to deliver to the court a certified copy of the Affidavit of Lien on the property, and either rewrite the existing bond or submit a notarized statement confirming a continuing obligation for $30,000.00. In an effort to comply with those instructions, Spath delivered to the magistrate copies of the Notice of Filing of Lien and the Affidavit of Lien, as well as the requested notarized statement.[1] Those documents evidenced the fact that a lien on real property, in favor of the United States government, had been filed in the appropriate county office. Apparently, the defendant and his sister never formally executed a personal surety bond.[2]

Afterwards, Velez absconded prior to the second day of his trial. The government then sought an order of forfeiture of the original $60,000.00 bond. The bondsman urged the government to correct its motion to reflect the magistrate's amendment, but the government did not act. The district court entered an order forfeiting the entire amount of the original bond. Soon afterward, the bondsman moved the court, pursuant to Fed.R.Crim.P. 46(e), to set aside or remit the forfeiture order. In support of his motion, Spath cited the modification of the original agreement. Moreover, the magistrate acknowledged her earlier intent to reduce the corporate surety's obligation and recommended to the district judge that the motion be granted. The government continued to oppose any reduction, arguing that the defendant's failure to execute a personal surety bond nullified the new agreement. The district court ruled favorably to the government and denied the motion. The bondsman then petitioned the court to reconsider its order, and requested a hearing. He also provided the district judge with transcripts of the two hearings

1. At an earlier point in these proceedings, some confusion arose as to whether the bondsman actually returned the documents to the magistrate. The parties now seem to agree that he did deliver the papers, but that they were temporarily misplaced. The court subsequently discovered its copies.

2. Both in the district court and on appeal, the parties vigorously debate whether the government can collect on the lien, in the absence of an executed personal surety bond. We need not address that question. For the purposes of our disposition of the case, the only relevant fact pertaining to the missing bond is that the magistrate clearly did not assign Spath the responsibility of obtaining it.

at which the magistrate restructured the bond. After the hearing, the judge expressed the opinion that because a personal surety bond was never executed, there was no satisfaction of the condition precedent to the modification. He subsequently entered a written order affirming the original forfeiture. Spath appeals this adverse judgment.

On appeal, both the bondsman and the government focus on whether the defendant's compliance with the magistrate's directive effected a valid modification of the bond agreement. Their debate centers on the proper application of the common law axiom that a bond agreement should be interpreted as a contract between the parties. *United States v. Miller,* 539 F.2d 445, 447 (5th Cir.1976). Nevertheless, we find the answer in Fed.R.Crim.P. 46(e), a provision specifically designed to prevent inequitable forfeitures.[3]

Rule 46(e) confers on the district court the authority to set aside or remit an order of forfeiture "if it appears that justice does not require ... enforcement." The equitable nature of this power endows the district court with broad discretion to determine appropriateness of remission. *See, e.g., United States v. Bass,* 573 F.2d 258, 259 (5th Cir.1978). For that reason, the district court's decision may not be disturbed unless it is arbitrary and capricious. *United States v. Skipper,* 633 F.2d 1177, 1180 (5th Cir.1981). In the usual case, the court will examine a variety of factors to determine if the district court arbitrarily exercised its discretion. For example, the court will evaluate the cost and inconvenience to the government, the amount of resulting delay, the stage of the proceedings when the de-

fendant absconds, the deliberateness of the breach, the prejudice to the government, and the public interest and necessity of obtaining the accused's presence. *See United States v. Parr,* 594 F.2d 440, 444 (5th Cir.1979). Here, however, these concerns are not particularly applicable, since this set of facts does not present the customary context governing remission cases. In most instances the surety seeks a reduction after the defendant has been returned to the court's jurisdiction. *See, e.g., Bass,* 573 F.2d at 260. That situation is not present in this appeal. But regardless of the different circumstances, several considerations still lead us to conclude that the district court abused its discretion in refusing to reduce the forfeiture order to $30,000.00.[4]

More significantly, this confusing state of affairs is a direct result of the bondsman's reliance upon the magistrate's decision and accompanying instructions on the implementation of that order. The magistrate directed Spath to send her a copy of the Affidavit of Lien, after its filing in the county office, and a statement confirming an obligation for $30,000.00. The bondsman promptly complied with this direction. There is no indication that the magistrate placed the burden on Spath to obtain a personal surety bond executed by the defendant and his sister. Rather, the record shows that the bondsman met every condition imposed by the magistrate to effectuate a reduction in his obligation. In fact, both the government and the district court recognize that the surety is blameless in this case. Under these circumstances, the integrity of our judicial system demands that the bondsman is entitled to rely upon

---

**3.** The fact that the parties frame the issue as one of contract does not obscure the essential nature of the appellant's claim. In his original motion to modify the forfeiture order, Spath specifically cited Fed.R.Crim.P. 46(e) as a basis for the desired relief. Furthermore, throughout the proceedings, he has emphasized the equitable nature of his request and appealed to the discretion of the court. For these reasons, the government's representations at oral argument, to the effect that the appellant did not invoke this provision before the district court and that

the judge probably would have remitted the forfeiture if asked to do so, are insupportable.

**4.** We note that, despite the breadth of this discretion, other appellate courts have similarly reversed district courts when they act in an arbitrary manner. *See, e.g., Appearance Bond Surety v. United States,* 622 F.2d 334 (8th Cir. 1980); *Jeffers v. United States,* 588 F.2d 425 (4th Cir.1978); *United States v. Kirkman,* 426 F.2d 747 (4th Cir.1970); *United States v. Foster,* 417 F.2d 1254 (7th Cir.1969).

the magistrate's oral representations,[5] especially when no written procedure existed for modifying a bond agreement.[6]

Spath not only relied upon the magistrate, but he did so to his detriment. After the magistrate approved restructuring the agreement, the surety released the sister's certificate of deposit and also refrained from surrendering the defendant as was his original plan. Additionally, since the magistrate offered an alternative solution, Spath did not execute a new corporate surety bond, which would have clearly reflected his reduced obligation. Finally, believing that he was assuming a risk of only $30,000.00, he allowed the lien on the sister's property to run in favor of the government. Thus, he foreclosed the possibility of using the lien to increase his own security to cover a $60,000.00 risk. This harm, resulting from the bondsman's good faith reliance on the magistrate, reinforces the conclusion that the imposition of a forfeiture in the amount of $60,000.00 was patently unjust.

■ This unfairness is highlighted by the district court's inappropriate justification of its order. The district judge apparently reasoned that because the total amount of the bail had not been reduced and the personal surety bond had not been executed, Spath should bear the loss, regardless of any inequity. In effect, the court appears to have been more concerned that the government receive the entire $60,000.00. This rationale is improper. Enrichment of the government is not the relevant purpose of a bail bond. *Parr,* 594 F.2d at 444; *see also, Dudley v. United States,* 242 F.2d 656 (5th Cir.1957). On the contrary, the true object of a bond is to secure the presence of the defendant. *Skipper,* 633 F.2d at 1180; *see* 18 U.S.C. § 3146. In the unique posture of this case, that goal is not furthered by, and justice does not permit, exacting an obligation on a bondsman much greater than the amount he reasonably believed was his responsibility.[7]

Accordingly, we can only conclude that the district court abused its discretion in failing to remit the bond forfeiture. We therefore VACATE the order of the district court, and REMAND with directions to remit the forfeiture to $30,000.00.

**5.** The importance of honoring a party's good faith reliance upon a judicial officer is hardly a novel proposition. That same consideration prompted the Supreme Court to permit the hearing of appeals filed after expiration of the prescribed time period, when the trial court misled the party into believing the period had been properly extended. *See Thompson v. Immigration and Naturalization Service,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964) (district court incorrectly informed party that post-trial motions, which if made in time would have tolled the deadline for filing appeal, were timely filed); *cf. Needham v. White Laboratories, Inc.,* 639 F.2d 394 (7th Cir.) (court mistakenly assured party that motion for reconsideration tolled the thirty-day notice of appeal time); *cert. denied,* 454 U.S. 927, 102 S.Ct. 427, 70 L.Ed.2d 237 (1981). *See also Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962) (trial judge granted extension of time for filing appeal, because of arguably incorrect finding of "excusable neglect"); *accord Chipser v. Kohlmeyer Co.,* 600 F.2d 1061 (5th Cir.1979); *cf. Hernandez-Rivera v. Immigration and Naturalization Service,* 630 F.2d 1352 (9th Cir.1979) (immigration judge extended time for appeal despite the lack of such authority).

**6.** Title 18 U.S.C. § 3146(e) merely empowers judicial officers to alter or amend bail conditions. It does not specify any procedural requirements for effectuating a modification. Prior to this case, no procedure apparently existed in the Southern District of Florida. The government informed us at oral argument that the Southern District has since established a modification procedure, as a result of this case. In the future, parties must execute a new bond upon an amendment to the original agreement. Hopefully, with the implementation of such a rule, there will not be a recurrence of this problem.

**7.** We emphasize, however, that our holding does not generally sanction the remission of a forfeited bond when the defendant has not reappeared. In most cases, remission while the accused is still at large would undermine the purpose of bail bonds. *See Skipper,* 633 F.2d at 1180. Nevertheless, the unusual circumstances of this case render that consideration inapplicable. Admittedly, a $60,000.00 obligation might arguably provide the bondsman with a greater incentive to find the defendant. But such a marginal benefit to the court does not justify requiring of Spath an amount significantly higher than his good faith understanding of his liability.