**UNITED STATES of America, Plaintiff,**

v.

**Ismael Felipe ARNAIZ, et al., Defendant–Appellee,**

v.

**ALL STATE BAIL BONDS, INC. and Jerry Miller, Movants–Appellants.**

No. 85–1089.

United States Court of Appeals, Ninth Circuit.

Submitted Aug. 13, 1987.*

Decided March 11, 1988.

Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Robert M. Haggard, Coral Gables, Fla., for movants-appellants.

A.P. Walter, Jr., Coral Gables, Fla., for defendant-appellee.

Before SCHROEDER, POOLE and KOZINSKI, Circuit Judges.

POOLE, Circuit Judge:

Appellant All State Bail Bonds, Inc. (All State) challenges the jurisdiction of the district court to order All State to return to defendant Arnaiz the collateral and one-half of the premium paid to obtain a corporate surety bond. We reverse the district court's order regarding the premium, but we affirm its jurisdiction to order the return of the collateral.

We begin with a brief statement of the facts.[1] In March of 1984, Arnaiz was indicted on a variety of federal drug charges. He obtained a $250,000 corporate surety bond from All State Bail Bonds, through its agent, Jerry Miller. On October 15, 1984, All State surrendered Arnaiz to the United States Marshal. A U.S. Magistrate relieved All State of its suretyship obligations, exonerating the bond and ordering All State to return to Arnaiz his collateral ($12,000). The magistrate's order was affirmed by the district court on October 19.

On October 26, Arnaiz moved to recover the premium on the bond. All State failed to respond, and on November 16, the district court ordered All State to return half of the premium ($15,000). All State's motion for reconsideration of the orders to return the collateral and premium was denied on March 15, 1985, and All State brought this appeal.[2]

1. Arnaiz has moved to strike All State's statement of facts as outside the record on appeal. As we find that the contested portion of the statement is irrelevant to the issue before us, we deny the motion.

2. We have jurisdiction of this appeal pursuant to 18 U.S.C. § 3145(c) and 28 U.S.C. § 1291. The order appealed from finally adjudicates a matter collateral to and separable from the central case, and All State's claim could not effec-

On April 8, 1985, the district court granted All State's motion for a stay pending appeal:

> The Application for Stay submitted by All–State Bail Bonds, Inc. is GRANTED. The Court's Order dated November 16, 1984, was in the nature of a default due to the surety's failure to respond. Subsequently, the surety failed to show good cause for setting aside the default. However, the Court is now concerned that, notwithstanding the surety's failure to respond, the Court may not have had jurisdiction to enter its judgment. See *Rader v. Manufacturers Casualty Insurance Company of Philadelphia,* 242 F.2d 419 (2d Cir.1957).
>
> Under these circumstances, it appears only proper that a Stay should be entered pending resolution of the matter by the Court of Appeals.

The district court revised this order two days later, specifying that the stay did not apply to the collateral posted by Arnaiz:

> The Court does not believe that the collateral stands in the same position as the premium paid by ARNAIZ for his bail bond. As such, it is not directly involved in the jurisdictional question raised by All–State Bonds, Inc., and therefore should be returned to ARNAIZ.

It is not disputed that the district court had jurisdiction to exonerate the bond upon All State's surrender of Arnaiz. 18 U.S.C. § 3149; Fed.R.Crim.Proc. 46. Thus, the issue presented to this court is a narrow one: did the district court have jurisdiction to order All State to return to Arnaiz all of the collateral and one-half the premium paid to obtain the exonerated bond? The

issue appears to be one of first impression in the federal courts. The parties have directed us to a handful of cases, none of which directly addresses the precise issue presented here.

For reasons that will be discussed below, we agree with the district court that the collateral does not stand in the same position as the premium paid by Arnaiz. We will first address the question of the premium.

## I

In determining whether the district court had jurisdiction, we must bear in mind the "fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equipment & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *General Atomic Co. v. United Nuclear Corp.,* 655 F.2d 968, 968–69 (9th Cir.1981), *cert. denied,* 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982). Consequently, a district court only has such authority as has been "expressly or impliedly granted by an act of Congress." *Koch v. Zuieback,* 316 F.2d 1, 3 (9th Cir.1963).[3]

Here, the district court had jurisdiction over the criminal case under 18 U.S.C. § 3231, and the district judge had power to conduct bail proceedings under 18 U.S.C. §§ 3141 and 3041. The bond was exonerated upon surrender of the defendant under 18 U.S.C. § 3149 and Rule 46(f) of the Federal Rules of Criminal Procedure.[4]

---

tively be raised at a later stage of the proceedings. Consequently, the order is final within the meaning of 28 U.S.C. § 1291. *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); *Cf. Carbo v. United States,* 288 F.2d 282, 283 (9th Cir.1961) (appeal from order exonerating bond and remanding defendant to custody).

3. By contrast, state trial courts are courts of general jurisdiction. Thus, decisions as to the powers of state courts in similar situations, *see, e.g., Yording v. Walker,* 683 P.2d 788 (Colo. 1984), are inapplicable.

4. 18 U.S.C. § 3149 provides: "A person charged with an offense, who is released upon the execution of an appearance bond with a surety, may be arrested by the surety, and if so arrested, shall be delivered promptly to a United States marshal and brought before a judicial officer. The judicial officer shall determine in accordance with the provisions of section 3148(b) whether to revoke the release of the person, and may absolve the surety of responsibility to pay all or part of the bond in accordance with the provisions of Rule 46 of the Federal Rules of Criminal Procedure. The person so committed shall be held in official detention until released

None of these provisions expressly allows adjudication of a dispute regarding the bond premium. The question is whether such power can fairly be implied as necessarily ancillary to the exoneration of the bond. To answer this question, we must determine whether the premium dispute is so closely related to the purposes of the bail provisions that denial of jurisdiction would necessarily interfere with the district court's ability to carry out its statutory mandate.

We find nothing to indicate that Congress intended to extend jurisdiction to a contractual dispute over the bond premium. The purpose of bail is to secure the presence of the defendant. *United States v. Velez*, 693 F.2d 1081, 1084 (11th Cir.1982); *United States v. Parr*, 594 F.2d 440, 442 (5th Cir.1979). This purpose is fulfilled by the surrender of the defendant as a condition of exoneration. The statutes speak only of the rights and obligations of the parties in connection with the appearance guarantee; however, the outcome of the premium dispute will have no effect on the defendant's appearance in court.

On this point, we agree with the reasoning of the district court in *United States v. Soucy*, 60 F.Supp. 500 (D.Minn.1945). That case involved a dispute between two co-sureties on the bail bond of the defendant. The defendant failed to appear, and judgment on the forfeited bond was paid by one of the co-sureties, who then made a motion to recover contribution from the other surety. The district court held that it did not have jurisdiction:

> It must be remembered that the judgment herein was entered in a matter which pertains exclusively to proceedings which were invoked by the United States as against the sureties on the bond. The only jurisdiction of this Court which the

United States invoked was in the criminal proceeding and the enforcement of the bail contract therein.... [The co-sureties'] rights as between themselves by reason of anything growing out of their bail contract or by reason of any equitable rights which may inure to either one is of no concern to the government. The petition herein, therefore, cannot be properly characterized as an ancillary proceeding because when the rights of the government became satisfied by reason of its recovery on the bail bond, ... [t]he purpose for which the jurisdiction of this Court was invoked had been fulfilled.

60 F.Supp. at 503–04. While *Soucy* was decided before the current bail provisions were enacted, we find nothing in the current provisions to change the result. We disagree with Arnaiz' contention that *Soucy* should be distinguished as a dispute between co-sureties, rather than between the principal and a single surety; both disputes arose out of the bail contract, and neither is so intimately connected with the government's object of securing the defendant's appearance in court that it compels adjudication in a federal forum.

Nor can jurisdiction over the bond premium dispute be implied by Rule 46(e)(3).[5] Subdivision (e) expressly applies only to the liability of the surety where there has been a forfeiture of bail. Again, only the liability of the surety upon the appearance guarantee is implicated. Rule 46(e) cannot be read to make any contractual claim against a bail bondsman, no matter how unrelated to the appearance guarantee, enforceable on motion.

■ Finally, the district court's order regarding the premium cannot be sustained under 28 U.S.C. § 1352, which provides:

---

pursuant to this chapter or another provision of law."

Rule 46(f) provides: "When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail. A surety may be exonerated by a deposit of cash in the amount of the bond or by a timely surrender of the defendant into custody."

5. Rule 46(e)(3) provides, in part: "By entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served. Their liability may be enforced on motion without the necessity of an independent action."

The district courts shall have original jurisdiction, concurrent with State courts, of any action on a bond executed under any law of the United States ...

In the first place, Arnaiz did not bring an original action in the district court; instead, he made a motion for the refund following exoneration of the bond in his criminal case. Secondly, Arnaiz' action to recover the premium would be barred under the case which concerned the district court here, *Rader v. Manufacturers Casualty Insurance Co.*, 242 F.2d 419 (2d Cir.1957). *Rader* involved a suit brought by indemnitors against a surety in an effort to invalidate the indemnity agreement under which they agreed to reimburse the surety for its loss in connection with a forfeited bail bond. The Second Circuit held that the district court lacked jurisdiction, because a suit involving the indemnity agreement was not an action "on a bond" within the meaning of section 1352:

> Plaintiffs, by their present action attack the validity of the indemnity agreement dated November 30, 1949, the confession of judgment dated December 1, 1949, and the agreement of June 12, 1959. None of these were required to be executed by any law of the United States in connection with the giving of a surety bail bond. The various agreements under attack are collateral arrangements of the surety and indemnitors and were executed to afford protection to the defendant surety company and its agents, and did not inure to the benefit of the United States.

242 F.2d at 427. We believe the holding in *Rader* would apply to bar Arnaiz' claim here. A suit "on a bond" concerns only the *beneficiary's* right to recovery against the surety, and the narrow inquiry is whether the conditions of forfeiture have been established. In contrast, a suit by Arnaiz to recover his premium involves an inquiry into the contractual obligations of the principal and the surety under the surety agreement. As with the bail provisions discussed above, we do not believe that the statute provides a basis for implying jurisdiction over the latter claim.[6]

## II

The same considerations governing jurisdiction over the premium dispute control jurisdiction as to the order regarding the collateral. Specifically, the order can properly be considered to be within the district court's jurisdiction if it was necessarily ancillary to the order exonerating the bond. We believe that the return of the collateral, unlike the return of the premium, was so inextricably linked with the exoneration order that it must be considered to be within the district court's jurisdiction pursuant to 18 U.S.C. § 3149 and Rule 46(f).

Rule 46(f) provides that when the conditions for exoneration are satisfied, the court "shall exonerate the *obligors* and release any bail" (emphasis added). The use of the plural term "obligors" is not insignificant; it is a recognition that frequently more than one party has posted security on behalf of the defendant and that all such parties are entitled to the return of their security. Here, the defendant posted $12,000 as security against the risk of his non-appearance. That collateral stood in the same position as if it had been posted directly with the court; exoneration necessarily included the release of the collateral, because the defendant's appearance obligation had been mooted by his surrender.

Our position is supported by cases in which courts have undertaken to adjudicate disputes over the proper disposition of collateral on exonerated appearance bonds. For example, in *United States v. Parr*, 594

---

6. The dissent argues that this case falls within the doctrine of ancillary jurisdiction. Under the cases cited, however, the dispute must concern "property or assets *actually or constructively drawn into the court's possession or control by the principal suit.*" *Fulton Nat'l Bank v. Hozier*, 267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925) (emphasis supplied). To fit within this rule, the dissent asserts that "a bail bond is property in the possession of the federal court." *See* dissenting opinion at 223–24. However, the dispute here is over the *premium*, which is not in the court's possession or control, but rather is in the possession and control of All State. In contrast, the collateral is at least constructively within the court's possession or control. *See infra* at 221–22.

F.2d 440 (5th Cir.1979), the amount of defendant's bond, $75,000, was deposited into the registry of the court by a third party, Manges. Manges, however, did not subscribe to the bond as a surety. After forfeiture of the bond, Parr's estate contended that it was entitled to any remission and that Manges should be regarded only as an unsecured creditor of the estate. The Fifth Circuit held that the district court properly awarded the remission to Manges. 594 F.2d at 442–43.[7] *See also United States v. Bursey*, 515 F.2d 1228 (5th Cir.1975) (defendant's parents entitled to refund of cash deposit).

Although the *Parr* court did not explicitly consider the jurisdictional issue, it is clear that it regarded the return of the collateral as a necessary incident to the order of remission. There, as here, the court's statutory duty of "releas[ing] any bail" could not be fulfilled without a determination of which party was entitled to receive it. Here, the court determined that $12,000 of the $250,000 bond was posted indirectly by Arnaiz as collateral. It was within the court's jurisdiction to order that amount returned to Arnaiz upon the exoneration of the bond.

### III

In conclusion, we affirm the district court's order requiring All State to return Arnaiz' collateral as within the district court's jurisdiction. However, we conclude that the district court was without jurisdiction to order All State to return half of the premium paid by Arnaiz to obtain the bail bond, and accordingly, that order must be set aside. Nonetheless, we wish to emphasize that Arnaiz is not without remedy; he may bring a separate action for the return of his premium in state court, or in federal court if there is diversity jurisdiction.[8] We hold only that, unlike his entitlement to the collateral, his claim for a refund of the premium cannot be adjudicated in federal

court as an adjunct to the exoneration of the surety bond.

### AFFIRMED IN PART, REVERSED IN PART.

SCHROEDER, Circuit Judge, dissenting.

The majority holds that although the district court has jurisdiction to terminate a bonding company's obligation on a bail bond before trial, the court lacks jurisdiction to order a corresponding return of the premium owed to the defendant as a result of the cancelled obligation. Thus, the majority forces the defendant to file a separate action in state court for a refund of the premium paid to obtain bail ordered pursuant to 18 U.S.C. § 3142 and under the protections of the Eighth Amendment. This is an awkward, unjust, and unnecessary result. I therefore respectfully dissent.

Understanding what happened in this case is important. The defendant was arrested on serious charges and ordered to post $250,000 bond. In April 1984, he obtained bond from the appellant bonding company in return for posting collateral, and paying, up front, a $30,000 premium. About six months later, the bonding company asked to be relieved of its obligations as surety, apparently because it feared the defendant would not appear. The district court granted the request, and ordered the bond exonerated and the collateral released. It also granted the defendant's motion for a pro-rata return of the premium. The district court agreed with the defendant that if the bonding company was to be released of its obligations earlier than anticipated, then the defendant should be treated similarly.

The bonding company neither responded to Arnaiz's motion nor returned the premium when ordered to do so. Instead, when

---

7. The court held that title to the funds did not pass from Manges to Parr as a result of the transaction. The same is true with respect to the collateral here. In contrast, All State has a contractual claim to the premium which is not automatically divested by the exoneration.

8. We express no view on the merits of his claim, that is, whether he is entitled to a refund as a matter of state contract law. *See, e.g., Johnson v. Hicks*, 288 Ark. 158, 702 S.W.2d 797, 798 (1986).

it was served with an order to show cause why it should not be held in contempt for violating the court's order, it challenged subject matter jurisdiction with respect to the premium. At no time during the proceedings before either the district court or this court has the appellant given any reason why Arnaiz is not entitled to a return of the premium in question. The district court, in my view, very properly held that the bonding company had not shown good cause for failing to return the premium, and correctly refused to revoke its original order.

The district court clearly has jurisdiction to conduct bail proceedings pursuant to 18 U.S.C. §§ 3041 and 3141. The majority pointedly recognizes that Fed.R.Crim.P. 46(f) provides for the exoneration of a bond. Further jurisdictional authority is found in Rule 46(e)(3), which provides that "[b]y entering into a bond the obligors submit to the jurisdiction of the district court and irrevocably appoint the clerk of the court as their agent upon whom any papers affecting their liability may be served." The Rule further provides that the obligors' "liability may be enforced on motion without the necessity of an independent action." Fed.R.Crim.P. 46(e)(3). In this case, the practical effect of the district court's order is to condition exoneration upon return of the premium. The majority never explains why the order is not within the purview of bail proceedings conducted pursuant to federal statutes and Rule 46.

The majority cites absolutely no authority for the proposition that a federal criminal defendant's contract to obtain court-ordered bail is outside the scope of federal subject matter jurisdiction. The only circuit decision cited is *Rader v. Manufacturers Casualty Insurance Co.*, 242 F.2d 419 (2d Cir.1957), which involved a collateral dispute between bond cosureties concerning an indemnity agreement. In concluding that no federal jurisdiction existed, the Second Circuit noted that none of the agreements at issue was required in connection with a giving of a surety bail bond. *Id.* at 428. Exactly the opposite is true in this case. This case directly concerns the contract to obtain the bond. The district

court case relied upon by the majority, *United States v. Soucy*, 60 F.Supp. 500 (D.Minn.1945), similarly involved a dispute between cosureties for contribution after judgment had been entered on a bond, and did not involve a criminal defendant's initial obligation.

Even if the rules and statutes are insufficient to create jurisdiction expressly and independently, this is almost a classic case for exercising ancillary jurisdiction. As a leading treatise describes that concept, it means that

> a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the disposition of the matter properly before it, it may decide other matters raised by the case of which it could not take cognizance were they independently presented. Thus, if the federal court has jurisdiction of the principal action, it also may hear any ancillary proceeding therein, regardless of the citizenship of the parties, the amount in controversy, or any other factor that normally would determine subject matter jurisdiction.

13 Wright, Miller & Cooper, *Federal Practice and Procedure* § 3523 (1984).

Ancillary jurisdiction historically focused on the relationship of defendants' and intervenors' nonfederal claims to property in the possession of the federal court. An early and instructive case is *Freeman v. Howe*, 24 How. 450, 65 U.S. 450, 16 L.Ed. 749 (1861). In *Freeman*, mortgagees of some railroad cars brought a state replevin action against a marshal who had attached the cars to secure judgment in a federal diversity suit. Although the mortgagees prevailed at trial, the Supreme Court reversed, holding that the state court was powerless to interfere with property within the control of the federal court. The Court noted that ancillary jurisdiction was available in federal court over the mortgagees' claims, and therefore they could have intervened in the federal action.

Likewise, in *Fulton National Bank v. Hozier*, the Supreme Court stated:

The general rule is that when a federal court has properly acquired jurisdiction over a cause it may entertain, by intervention, dependent or ancillary controversies; but no controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit.

267 U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925). From this narrow initial approach, ancillary jurisdiction expanded until it covered other types of claims, such as compulsory counterclaims, cross-claims, and impleader.

Although the purpose of bail is to secure the defendant's presence, *United States v. Velez*, 693 F.2d 1081, 1084 (11th Cir.1982), a bail bond is deposited with the court and is itself a "written undertaking, executed by the defendant or one or more sureties, that the defendant ... [will] appear in a designated criminal action ... and that in the event he fails to do so, the signers of the bond will pay to the court the amount of money specified in the order fixing bail." *Black's Law Dictionary* 128 (5th ed. 1979). Thus, a bail bond is property in the possession of the federal court, and even if express jurisdiction is otherwise lacking, ancillary jurisdiction may properly be invoked for disputes involving it.

Furthermore, the exercise of ancillary jurisdiction is consistent with policy considerations. The bail bond dispute is a civil matter whose scope is governed by the Federal Rules of Civil Procedure, which provide broadly for the joinder of claims, joinder of parties, and intervention. The policy of efficient litigation is fostered by permitting the Federal Rules their intended scope to avoid burdensome litigation in different forums over related issues. *See* Fed.R.Civ.P. 1; *United Mine Workers v. Gibbs*, 383 U.S. 715, 724–25, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("under the Rules, the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged"). Permitting the district court ancillary jurisdiction over the contractual relationship between the defendant and the bonding company furthers these policies. The majority decision thwarts them.

I respectfully dissent.