[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 04-10877

————————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
November 10, 2005
THOMAS K. KAHN
CLERK

D. C. Docket No. 93-00581-CR-FAM

UNITED STATES OF AMERICA,

Plaintiff,

versus

JORGE ROJAS,
a.k.a. Chittie,

Defendant,

ATHANS BAIL BONDS, INC.,
GEORGE ATHANS,

Interested-Parties-Appellants
Cross-Appellees,

LIDIA PUCHADES,

Interested-Party-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____

**(November 10, 2005)**

Before BIRCH, CARNES and RONEY, Circuit Judges.

CARNES, Circuit Judge:

In June of 1994 Jorge Rojas was arrested in Miami on charges of conspiracy to possess with intent to distribute cocaine and conspiracy to import cocaine. The district court set his bail in the amount of $60,000.

In order to help secure Rojas' release, Lidia signed an indemnification agreement with Athans Bail Bond, the surety which actually posted the $60,000 bond for Rojas.[1] Puchades pledged her house as collateral, not to the court in order to secure the bail bond, but to the bail bond company in order to secure her obligation to indemnify it should the company have to pay on the corporate surety bond it posted on Rojas' behalf. She testified that she was not afraid of losing her

---

[1] In connection with this bond, Athans Bail Bonds was apparently acting as an agent for American Bankers Insurance Company. In some places the record refers to one of those corporate entities and elsewhere it refers to the other. Because the relationship of the two entities does not matter to our decision, we will refer to Athans Bail Bonds, the actual party to this appeal, as though it included American Bankers.

2

house because she knew Rojas—a neighbor of her mother—was a "straight person," who could be counted on to show up in court. She was wrong about that.

After pleading guilty to one of the charges against him, Rojas failed to appear at sentencing on December 22, 1994. The next day the district court revoked the bond that Athans Bail Bonds had posted and entered an order forfeiting its collateral. A final judgment of forfeiture was entered on January 20, 1995. The Government never attempted to enforce that judgment against Athans Bail Bonds. Nonetheless, the bonding company began a foreclosure action against Puchades based on her indemnification obligations to it. To avoid losing her house, which was the collateral she had put up to secure performance of her obligations, Puchades obtained a second mortgage on it for $60,000 and paid that full amount to Athans Bail Bonds.

In December of 1998, while Christmas shopping at a Miami mall, Puchades saw Rojas. After unsuccessfully attempting to apprehend him, she reported the sighting to Athans Bail Bonds. As a result, an investigator working for the company captured Rojas not long thereafter. He was jailed, and in March of 1999 was sentenced to prison.

Even though she was not actually a party to the corporate surety bond that Athans Bail Bonds had posted in the district court, Puchades filed a motion to set

3

aside the forfeiture of that bond in view of Rojas' capture. (She filed it in April of 2001, contending that she was not informed of the capture until shortly before then.) The district court granted that motion, entering on June 8, 2001 an order setting aside the forfeiture of the bond that Athans Bail Bonds had posted with the court.

On September 14, 2001, Puchades filed with the district court a motion to vacate which asked the court not only to set aside the final judgment of forfeiture but also to order Athans Bail Bonds to return to Puchades the amount she had paid it. After Athans Bail Bonds failed to appear for a hearing on the motion, the district court entered an order on November 7, 2001 granting the motion in both respects. The order relieved Athans Bail Bonds of the obligation to pay out anything on the bond it had posted with the court, but required it to refund to Puchades $60,000, which is the full amount she had paid to it under the indemnification agreement.

Athans Bail Bonds appealed, and we vacated the district court's order and remanded for further proceedings because the company had not been afforded sufficient notice of the hearing on Puchades' motion. On remand, the case was referred to a magistrate judge, who held an evidentiary hearing.

At the hearing Athans Bail Bonds contended that it had used the entire $60,000 Puchades paid it for expenses incurred in searching for and apprehending Rojas. More fundamentally, Athans Bail Bonds argued that any dispute between it and its indemnitor, Puchades, should be brought in a separate civil proceeding. In his report and recommendation, the magistrate judge did not address that contention. Addressing the merits of the dispute, the magistrate judge found that many of the claimed expenses were either overstated or nonexistent; he calculated that Athans Bail Bonds had $37,633.55 in legitimate expenses and recommended that the district court order the company and its president, George Athans, to pay $22,366.45 to Puchades. Athans Bail Bonds objected to the report and recommendation both as to the findings about its expenses and as to the failure to address its argument that the dispute should be brought "in a civil suit, probably in a state court."

In an order entered January 23, 2004, the district court adopted the report and recommendation of the magistrate judge, and in addition to vacating the forfeiture of the appearance bond it ordered Athans Bail Bonds and George Athans to "return $22,366.45 to claimant, Lidia Puchades." It is that part of the order Athans Bail Bonds and George Athans appeal.

5

The two of them make four arguments to us. First, they argue that George Athans was improperly held personally liable for the obligations or debts of Athans Bail Bonds, a corporation. Second, they argue that Puchades does not have standing in a federal criminal proceeding to seek recovery from them of the amount she paid under the indemnification agreement she had with Athans Bail Bonds. Third, they argue that the district court should have allowed Athans Bail Bonds to claim all of its expenses for the apprehension of Rojas, including expenses the court disallowed as part of the company's ordinary costs of doing business. Fourth, they argue that the district court judge should have recused himself. We do not reach any of these arguments, however, because it is clear the district court did not have subject matter jurisdiction over the dispute between the parties about whether Athans Bail Bonds or its president was required to refund to Puchades the money that she had paid under their indemnification contract.

## II.

Federal courts are courts of limited jurisdiction. Keene Corp. v. United States, 508 U.S. 200, 207, 113 S. Ct. 2035, 2040 (1993); Delaware v. Van Arsdall, 475 U.S. 673, 692, 106 S. Ct. 1431, 1442 (1986); Taylor v. Appleton, 30 F.3d 1365, 1367 (11th Cir. 1994). As the Supreme Court has reminded us, "the Court early in its history wisely adopted a presumption that every federal court is without

jurisdiction unless the contrary affirmatively appears from the record." Van

Arsdall, 475 U.S. at 692, 106 S. Ct. at 1442 (internal citations and marks omitted);

accord Turner v. Bank of N. Am., 4 U.S. (4 Dall.) 8, 10 (1799) (explaining that,

because a federal court is a court of limited jurisdiction, "the fair presumption

is . . . that a cause is without its jurisdiction, until the contrary appears.");

Fitzgerald v. Seaboard Sys. R.R., Inc., 760 F.2d 1249, 1251 (11th Cir. 1985)

("[S]ince the courts of the United States are courts of limited jurisdiction, there is a

presumption against its existence.") (internal marks omitted).

We should not overstep the limits on our jurisdiction and exercise power we

do not have over disputes Congress has not given us authority to decide. Keene,

508 U.S. at 207, 113 S. Ct. at 2040 ("Congress has the constitutional authority to

define the jurisdiction of the lower federal courts, and, once the lines are drawn,

'limits upon federal jurisdiction . . . must be neither disregarded nor evaded.'")

(internal citations omitted).

Congress has given district courts jurisdiction to forfeit bail bonds posted

with the court in federal criminal cases, to remit forfeitures, and to exonerate

obligors and sureties. Fed. R. Crim. P. 46(e)–(f) (2001).[2] This appeal is not about

---

[2] Fed. R. Crim. P. 46 was amended in 2002, but the only changes were in style and in the numbering of subdivisions. Fed. R. Crim. P. 46 advisory committee's note ("The language of Rule 46 has been amended as part of the general restyling of the Criminal Rules to make them more easily understood and to make style and terminology consistent throughout the rules.

any of that. It involves instead a contractual dispute. On one side of that dispute is

Athans Bail Bond, a company which served as a surety, and its president. On the

other side is Lidia Puchades, an indemnitor of the company on one of its surety

obligations. Congress has not conferred jurisdiction on the federal courts to decide

this kind of contractual dispute. The parties do not have diverse citizenship, and

even if they did, the amount in controversy is not enough for diversity jurisdiction

purposes.

After the criminal defendant was caught, the district court on Puchades'

motion set aside its prior revocation order and set aside the judgment of forfeiture.

Rule 46(e)(2)[3] authorizes district courts to do that, assuming that the indemnitors

of sureties have standing to move under the rule. That is a big assumption but it is

not one that we must test and resolve here. We need not, because it is clear that

neither subpart (e)(2) nor any other provision of Rule 46 authorizes district courts

---

These changes are intended to be stylistic only, except as noted below."). In this opinion we will cite to the pre-amendment version of the rule because that is the version in effect at the time the case was in the district court. Readers of the opinion in this case should be aware that the provisions we refer to as Rule 46(e) and (f) are now Rule 46(f) and (g).

[3] Prior to the 2002 amendments, see n.1 above, Rule 46(e)(2) provided:

> The court may direct that a forfeiture be set aside in whole or in part, upon such conditions as the court may impose, if a person released upon execution of an appearance bond with a surety is subsequently surrendered by the surety into custody or if it otherwise appears that justice does not require the forfeiture.

Fed. R. Crim. P. 46(e)(2) (2001).

to go beyond setting aside revocations and vacating forfeitures to ordering the refund of money a surety had collected from its indemnitor under their contract. Rule 46 is not about indemnification. It is not about the contractual or other state-law rights of an indemnitor. It does not purport to give district courts jurisdiction to decide disputes arising under indemnification contracts.

Rule 46(e)(2) only authorizes a court to set aside bail forfeitures. Rule 46(f)[4] only authorizes courts to exonerate a bond obligor (here the bail bond company) from its obligations under the bond and to release any bail to the obligor. Neither of those rule provisions nor any other provision of Rule 46 purports to authorize a court to decide the competing contractual claims arising between an obligor and indemnitor under the agreement between them.

The Ninth Circuit has inconsistently held that deciding a dispute about the bond premium the defendant paid a surety is outside a district court's jurisdiction to conduct bail and bond proceedings, but that deciding a dispute over collateral posted by the defendant with the surety is "necessarily ancillary" to that

---

[4] Prior to the 2002 amendments, <u>see</u> n.1 above, Rule 46(f) provided:

> When the condition of the bond has been satisfied or the forfeiture thereof has been set aside or remitted, the court shall exonerate the obligors and release any bail. A surety may be exonerated by a deposit of cash in the amount of the bond or by timely surrender of the defendant into custody.

Fed. R. Crim. P. 46(f) (2001).

9

jurisdiction. United States v. Arnaiz, 842 F.2d 217, 219 (9th Cir. 1988). The first part of the Arnaiz decision is right, the second part wrong. The reasons the Ninth Circuit gives for concluding that bond premium disputes are outside the jurisdiction of district courts apply as well to disputes over collateral between the surety and the criminal defendant in Arnaiz and indemnification disputes between the surety and indemnitor in the present case.

When asked to decide a dispute over the premium the defendant had paid the surety to post the bond with the district court, the Ninth Circuit phrased the jurisdictional question as: "whether the premium dispute is so closely related to the purposes of the bail provisions that denial of jurisdiction would necessarily interfere with the district court's ability to carry out its statutory mandate." Id. at 220. It answered that question "no." Id. The court noted that the applicable bail bond provisions "speak only of the rights and obligations of the parties in connection with the appearance guarantee." Id. It observed that the purpose of bail is to secure the presence of the criminal defendant, and reasoned that the purpose is fulfilled by the defendant's surrender as a condition of exoneration. Id.

We agree with that part of the Arnaiz opinion's reasoning. Because the outcome of a dispute over the premium can have no effect on the surrender of the defendant and thus has no bearing on the purpose of bail, federal courts have no

jurisdiction to decide premium disputes. Id. Likewise, because the outcome of indemnification disputes between the surety and its indemnitor following the surrender of the defendant can have no effect on that surrender and thus has no bearing on the purpose of bail, federal courts have no jurisdiction to decide indemnification disputes either.

The Ninth Circuit also found in Arnaiz that there is "nothing to indicate that Congress intended to extend jurisdiction to a contractual dispute over the bond premium." Id. Right. Likewise, there is nothing to indicate that Congress intended to extend jurisdiction to a contractual dispute about the collateral the indemnitor posted with the surety or about the indemnification payments that have been made or are due between them.

In spite of the force of its reasoning running the other way in the part of its decision involving the premium dispute, the Ninth Circuit in Arnaiz still managed to conclude that district courts have jurisdiction to decide disputes between a defendant and his surety about return of the collateral he posted with the surety. Id. at 221–22. The court thought Rule 46(f)'s "use of the plural term 'obligors' is not insignificant." Id. at 221. It inferred from the use of the plural the wholly unremarkable fact that "frequently more than one party has posted security on behalf of the defendant." Id. Fueled by that fact the court drove to the conclusion

11

that when the defendant surrenders as required, "all such parties are entitled to the return of their security." Id. The jurisdictional problem the court sped by is that if a defendant is entitled to the return of the security that he posted with the surety as collateral for the surety's protection, it is because of the contract between the two, not because of any provision in Rule 46.[5]

The principal flaw in the Ninth Circuit's reasoning in this part of the Arnaiz decision is the proposition that the money the defendant posted as collateral with the surety "stood in the same position as if it had been posted directly with the court." Id. No, it did not. The money was not posted with the court as bail to ensure the defendant's appearance. It was posted as collateral with the surety to protect the surety in the event the defendant failed to appear and the surety had to pay out on the bond. If the defendant had not appeared, the court could not have entered an order forfeiting as part of the bail the money that the defendant posted

---

[5] The Arnaiz opinion's heavy reliance on the use of "obligors," the plural, in Rule 46(f) cannot be reconciled with the purely stylistic revision of the rule's language in the 2002 amendments. The revised provision, now found in Rule 46(g), does not use "obligors" or any other plural term. Instead, it simply refers to "the surety" and "a surety." The drafters of the revised language assured us that no change in the meaning of the provision was intended. See Fed. R. Crim. P. 46 advisory committee's note ("These changes are intended to be stylistic only, except as noted below."). Arnaiz's plural-fixation position is not possible under the revised language, which effected no change in meaning. Therefore, the revisions refute the Arnaiz court's position.

In fairness to the Ninth Circuit, the 2002 revisions were not around when that court decided Arnaiz. They are around now.

12

as collateral with the surety; it could not, because that money was not part of the bail. The money the criminal defendant posted with the surety, not being within the possession or control of the court, was not within the court's jurisdiction.

Contrast the Arnaiz situation and the one before us here with cases where money is posted with the court as bail, is still in the possession or control of the court, and in order to release the bail under Rule 46(f) the court necessarily must decide where that money goes. See United States v. Rubenstein, 971 F.2d 288, 293 (9th Cir. 1992) ("To release the [bail] funds, it was necessary to determine to whom they should be released."); United States v. Parr, 594 F.2d 440 (5th Cir. 1979); United States v. Bursey, 515 F.2d 1228 (5th Cir. 1975). The court in those instances cannot perform the functions that are clearly within its jurisdiction without deciding the ancillary question of who is entitled to the money. The court has the jurisdiction and duty to release, and in order to do that it must decide who gets it.

That is different from the situation the Ninth Circuit had before it in Arnaiz and the one we have before us here. In the Arnaiz situation the court could exonerate the surety's obligation on the bond—there was no bail to be released—without deciding whether the criminal defendant had a contractual or other right to return of the collateral he had posted with the surety. Similarly, in

13

our situation the court could have, and should have, set aside the forfeiture and exonerated the surety's obligation on the bond without deciding whether the indemnitor has a right to a refund of payments she made to the surety under their indemnification agreement.

The Ninth Circuit asserted in Arnaiz that "exoneration [of the bond] necessarily included the release of the collateral [the defendant had posted with the surety], because the defendant's appearance obligation had been mooted by his surrender." 842 F.2d at 221. To the extent "necessarily included" refers back to the federal court order exonerating the bond, that statement is plainly wrong. Nothing in Rule 46(f) exoneration orders must, or even may, adjudicate the rights and obligations of the defendant existing between the surety and its indemnitor under their agreement.

To the extent "necessarily included" in the quoted assertion from Arnaiz refers instead to the contractual right of the defendant under his agreement with the surety, the statement probably is accurate (that's the way we would imagine those type of contracts are drafted), but accurate or not the statement is irrelevant to the jurisdictional issue. The soundness of a decision on the merits, the correctness of a result if we had jurisdiction to decide the result, matters not one mite where jurisdiction is lacking. Absent diversity and the requisite amount in

14

controversy, federal courts lack jurisdiction to decide post-set aside disputes arising under contracts between sureties and criminal defendants, or sureties and indemnitors.

For all these reasons we conclude that, absent diversity of jurisdiction and the requisite amount in controversy, a district court does not have subject matter jurisdiction to decide an indemnification payment dispute between the surety on a bond posted in federal court and that surety's indemnitor. Resolving the dispute is not necessary to determining the surety's obligation to the court or to deciding any action the court is authorized to take. The dispute is a matter governed by contract, not by Rule 46. The court lacks the jurisdiction to be concerned with it.

The January 23, 2004 order of the district court is REVERSED insofar as it directs Athans Bail Bonds and George Athans to return $22,366.45 to Lidia Puchades, and the case is REMANDED for further proceedings consistent with this opinion.